195 N.J. Super. 257 (1983)
478 A.2d 1234
PRINCETON CABLEVISION, INC., D/B/A STORER CABLE COMMUNICATIONS, PLAINTIFF,
v.
UNION VALLEY CORPORATION ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
December 29, 1983.
*261 Dennis C. Linken, for plaintiff (Kirsten, Friedman and Cherin, attorneys; Steven Pasternak, on the brief).
Paul A. Rowe, for defendants (Greenbaum, Greenbaum, Rowe, Smith, Bergstein, Yohalem and Bruck, attorneys).
Barbara A. Harned, for intervenor Board of Public Utility Com'rs (Irwin I. Kimmelman, Attorney General of New Jersey, attorney).
Jeffrey L. Reiner, for intervenor New Jersey Cable Television Ass'n (Meyner and Landis, attorneys).
COHEN, J.S.C.
This case involves a franchised cable antenna television (CATV) system, an uncertificated satellite master antenna television (SMATV) system that seeks to serve a condominium development in the CATV's franchise area, the condominium developer whose owners also own the SMATV system, and the Board of Public Utility Commissioners (BPU), the agency that *262 oversees New Jersey's cable television industry. N.J.S.A. 48:5A-1 et seq. The focus of the litigation is on a recent decision of the Federal Communications Commission and its effect on the parties. The decision was to preempt all state regulation of SMATV systems.
Some definitions are liminally necessary. A CATV system is defined by the New Jersey statute. It is
any facility ... operated to perform the service of receiving and amplifying the signals broadcast by one or more television stations and redistributing such signals by wire, cable or other device or means ... to members of the public who subscribe to such service, or distributing through its facility any television signals whether broadcast or not.... [N.J.S.A. 48:5A-3(d)].
SMATV systems are described by the Federal Communications Commission:
An SMATV system normally serves residents of private multi-unit dwellings. It consists of a receive-only satellite earth station that provides premium programming signals transmitted to the receive station via satellite and a master antenna for the receipt of over-the-air television broadcast signals. These signals are combined and distributed through cable to subscribers residing in the multi-unit dwellings. [In re Earth Satellite Communications, Inc., CSR-2347, F.C.C. 83-526 (1983)].
Plaintiff has a local franchise and a non-exclusive certificate of approval from the BPU to operate a CATV system throughout Monroe Township. Defendant, Union Valley Corporation, is the developer of a condominium housing project located there and known as Communities of Concordia. Defendant, Communities of Concordia Homeowners' Association, is the association that was established, as required by statute, to administer and manage the condominium community. N.J.S.A. 46:8B-9(k), -12. Defendant, Communities of Concordia Television Corporation, is the owner of an SMATV system it intends to operate in the condominium community. All defendants are owned or controlled by the same principals. They are represented by one attorney in this lawsuit and take the same position on all litigated issues.
Communities of Concordia is an adult community which is planned for a total of some 2850 dwelling units. In early 1983, when less than 200 units were occupied, Plaintiff filed the *263 complaint that started this suit. Its gravamen was that an SMATV system was being constructed to serve the condominium community without BPU approval and therefore should be enjoined. The BPU and the New Jersey Cable Television Association intervened, generally in support of plaintiff's positions.
In February, I tentatively concluded that the SMATV was subject to New Jersey's Cable Television Act. I therefore temporarily enjoined expansion of the system until BPU approval could be obtained. I felt it unnecessarily harsh, however, to terminate cable service to current subscribers. In April, the BPU's Office of Cable Television granted temporary operating authority to the SMATV system for current subscribers and persons who had already negotiated for condominium purchases. By its terms, the temporary authority would terminate upon the entry by this court of a permanent injunction or upon disposition by BPU of an application that the SMATV had made for approval to operate.
In the Autumn, defendants moved to dismiss this suit. Since they were preliminarily halted by BPU and since they had applied for a certificate of approval from BPU, they argued, all further proceedings should take place in that agency. Plaintiff also moved. It sought an order for final judgment barring construction and operation of the SMATV system without BPU approval and an order requiring defendants to afford it access to the condominium community for the purpose of installing its CATV facilities.
While the motion was pending, I was advised that the Federal Communications Commission was about to render a decision that would have significant effect on the outcome of the litigation here. The decision, In re Earth Satellite Communications, Inc., CSR-2347, F.C.C. 83-526 (1983), was released on November 17.
Earth Satellite arose out of New Jersey. Suburban Cablevision was franchised and certificated to operate a CATV system *264 in East Orange. It was refused access to an apartment complex because the owner had already made arrangements with Earth Satellite Communications, Inc., for installation of an SMATV system solely to serve the complex. Earth Satellite had no municipal franchise or BPU certificate of approval. Suburban Cablevision sought judicial protection. It obtained favorable rulings that were founded on the conclusion that the restrictions of the Cable Television Act applied to the SMATV system. Earth Satellite then sought a declaratory ruling from the Federal Communications Commission.
The question before the FCC in Earth Satellite was whether it should preempt New Jersey's Cable Television Act so as to bar its application to SMATV systems. It said that there was a significant federal concern with the unfettered development of interstate transmission of satellite signals and of facilities for their reception. It therefore decided to preempt all state and local regulation of SMATVs to avoid frustration of that development. It focused its disapproval on barriers created by state licensing and regulation and expressed its adherence to "open entry policies in the satellite field for the purpose of creating a more diverse and competitive telecommunications environment."
The impact of Earth Satellite on the present case is to free the Concordia SMATV system from any local or state control of its operations. It is, further, to require the vacation of my preliminary injunction barring extension of the SMATV system and to obviate all application proceedings pending before the BPU. As to the authority of FCC to preempt state action in areas to which its authority extends, see Fidelity Federal Sav. & Loan Ass'n v. De La Questa, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); New York Commission of Cable Television v. FCC, 669 F.2d 58 (2 Cir.1982).
What remains? Three issues of importance survive the Earth Satellite decision. The first is whether § 49 of the Cable Television Act grants plaintiff access to Communities of *265 Concordia for the purpose of installing equipment to serve any subscribers it might sign up. The second is whether § 49 is unconstitutional because it authorizes the taking of multi-dwelling owners' property without requiring payment of compensation to them. The third issue is the challenge made by plaintiff to the validity of what it calls an exclusive service contract between the SMATV system and the homeowners' association.

Access
Even though Earth Satellite now enables Concordia's SMATV system to serve the condominium community free of state and local regulation, plaintiff seeks an order requiring that it be given access to the community to serve residents who prefer it to the SMATV system. Under the terms of its municipal franchise and certificate of approval, Plaintiff argues, it is dutybound to serve the entire municipality. The statute, it concludes, obliges the condominium developer and the homeowners' association to afford it access so that it can do so.
Defendants argue, first, that the issue of access ought to be decided by the Board of Public Utility Commissioners, second, that the statute does not require an owner to afford access to two competing cable companies, and, finally, that the statute is, in any event, unconstitutional.
The issues of the meaning and validity of the statutory language regarding access are best addressed in a court. Neither the doctrine of exhaustion of administrative remedies nor the doctrine of primary jurisdiction is absolute. Where, as here, solely legal issues are presented that do not engage the special competence of an administrative tribunal, the dispute is best resolved in court. Patrolman's Benevolent Ass'n v. Montclair, 70 N.J. 130 (1976); Atlantic City v. Laezza, 80 N.J. 255 (1979); Playcrafters, etc. v. Teaneck Bd. of Ed., 177 N.J. Super. 66 (App.Div. 1981), aff'd o.b. 88 N.J. 74 (1981). The statute itself envisions the hearing and determination of certain *266 cable television statutory issues in court, with the BPU playing the role of a party in the litigation. N.J.S.A. 48:5A-9(d).
N.J.S.A. 48:5A-49, as originally enacted in 1972, said:
No owner of a dwelling or his agent shall forbid or prevent any tenant of such dwelling from receiving cable television service, nor demand or accept payment in any form as a condition of permitting the installation of such service in the dwelling or portion thereof occupied by such tenant as his place of residence, nor shall discriminate in rental charges or otherwise against any such tenant receiving cable television service; provided, however, that such owner or his agent may require that the installation of cable television facilities conform to all reasonable conditions necessary to protect the safety, functioning, appearance and value of the premises and the convenience, safety and well-being of other tenants; and further provided, that a cable television company installing any such facilities for the benefit of a tenant in any dwelling shall agree to indemnify the owner thereof for any damage caused by the installation, operation or removal of such facilities and for any liability which may arise out of such installation, operation or removal.
Section 49 was twice amended. In 1982, it was amended to define "owner" to include a mobile home park owner or operator and "tenant" to include a mobile home park resident. L. 1982, c. 231, § 1. In 1983, it was further amended to redefine "owner" to include "a condominium association and housing cooperative". Those terms are also defined. L. 1983, c. 166, § 1. There was no new reference to the meaning of "tenant." It is plain, however, that the Legislature meant to include condominium homeowners' associations (and, a priori, condominium developers and housing cooperative corporations and associations) within the prohibitions of § 49. "Tenant," therefore, has to be read to include a condominium unit owner and a housing cooperative shareholder.
Defendants first argue that the statute does not require access by a cable television company once a competitor is in place and operating. The purpose of the law, they say, is to assure access by residents to cable service but not to a choice of competing cable services.
The Legislature may or may not have had in mind the possibility of competing cable services when it adopted § 49. Municipal consents and state certificates of approval may or *267 may not be exclusive as to any geographical area. One could reasonably argue that the law's concern is to assure that homeowners have the opportunity for some cable service, but not necessarily a choice of two.
The real point of § 49 was to prevent landlords from exacting an excessive price from tenants who want to receive or from cable companies who want to provide cable services. Realistically, few landlords would have a reason flatly to prohibit access. The danger was that owners might charge unfairly for it. The two recent amendments to § 49 merely extend its protection to mobile home residents and condominium unit owners and cooperative shareholders. The point, however, is the same, i.e., to bar the entity controlling access from improperly exacting tribute.
The Earth Satellite ruling by the FCC has not changed any of that. New Jersey treats franchised cable television companies in many respects as public utilities. But see N.J.S.A. 48:5A-4. It gives them certain responsibilities in the public interest and affords them certain protections in return. It requires them to offer service to the public generally and guards them against improper obstacles to their doing so. There is nothing about the statutory framework or about § 49 in particular to suggest that any of those protections should be automatically withdrawn because of the arrival on the scene of unregulated SMATVs. That new development has an uncertain impact on the franchised companies. It has no impact, however, on the relations between franchised companies and landowners and other controllers of access.
The obligations created by § 49 survive in the absence of any hint of legislative intent to the contrary. It is noted that the Legislature has not withdrawn § 49 protection from franchised companies where SMATVs provide competing service of unknown and unregulated quality.
In its Earth Satellite opinion, the Federal Communications Commission made it clear that the nation's purposes were best *268 served by encouraging competition among the developing cable technologies. It plainly expressed its contemplation that there would be competition within one apartment house or like development between an SMATV and a locally franchised cable company. It said:
Contrary to [the] assertion that preemption will stifle the development of broadband communications, we believe that this decision will encourage direct competition in a specific geographical area. * * * [I]t would appear that in states ... where franchised cable is provided access to multi-unit dwellings by state regulatory fiat, these services may co-exist, or at least have the opportunity to compete for subscribers. [at ____]
The survival of § 49 does not mean that a court should determine in each case whether, when, how, and in what circumstances the franchised cable company is entitled to access. These are matters that engage the special competence of the BPU and therefore should be heard there. It must recognize only that the availability of alternative unregulated SMATV service does not render § 49 ineffective. The BPU must determine, on application of the franchised company, such things as the manner of access and installation, the permitted nature and location of equipment, the time when access must be provided and the level and kind of damage and liability protection and the compensation to be afforded the owner.
There may be situations in which physical conditions will make access impractical. The imagination does not, however, suggest any. There may be situations in which land owners and occupiers unanimously agree there is no occasion for service by a franchised company. That may be a consideration if all units to be served are occupied and represented. But, whether such an agreement should bind future occupants is another matter altogether. Plainly, neither a condominium homeowners' association nor a housing cooperative may, by group action, bar CATV access to any one unit. The 1983 amendment to § 49 includes them as "owners." Therefore, the association or cooperative can not overrule the desires of a unit owner or shareholder.
*269 The matters that engage the special competence of the BPU and its Office of Cable Television should be resolved after hearings there in which all interested parties will have a chance to participate. This court's holdings are only that § 49 survives federal preemption of the regulation of SMATVs, that applications for access in individual cases should be made to the BPU, and that condominium associations and housing cooperatives may not effectively decide to bar access to a franchised cable company.

Section 49 is Constitutional
Defendants assert that § 49 is unconstitutional because it requires landowners to grant interests in their property without compensation. They rely on Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). That case involved a New York statute, N.Y.Exec.Law § 828 (McKinney 1982), whose thrust is very much like that of our § 49. Among the differences, however, is the following: § 49 prohibits an owner from demanding or accepting payment in any form as a condition of permitting installation of cable service. New York's § 828 prohibits all payments from tenants but bars only those payments from a cable television company that are "in excess of any amount which the Commission shall, by regulation, determine to be reasonable."
In Loretto, the United States Supreme Court held that § 828's requirement that an owner grant access authorizes a permanent physical occupation of his property and thus a "taking." The Constitution therefore requires a mechanism for fixing fair compensation to be paid to the owner.
Defendants argue that the absence of language like § 828's in the New Jersey statute renders it invalid because it authorizes a taking but does not afford compensation to the owner whose property is taken. If that were the fact, defendants would be correct. If § 49 authorized a taking without just compensation, it would be invalid.
*270 It is the court's duty to uphold the validity of a statutory provision if invalidation can be avoided. And, if it is necessary to engage in "judicial surgery" to save an ailing enactment, and if it appears that the legislature would have wanted the statute to survive, it is the court's duty to operate. Callen v. Sherman's, Inc., 92 N.J. 114 (1983); Right to Choose v. Byrne, 91 N.J. 287 (1982). The surgery can take the form of excision of an offending provision or supplying a constitutionally required one. There is nothing novel about engrafting a requirement of just compensation onto a statute that authorizes what amounts to a taking. Lomarch Corp. v. Mayor of Englewood, 51 N.J. 108 (1968).
In early language, § 49 prohibits an owner from demanding or accepting payment for permitting installation of cable service. It is plain from the context that the principal focus is on payment from tenants. In later language, § 49 requires the franchised company
to indemnify the owner ... for any damage caused by the installation, operation or removal of [cable] facilities....
A generous reading of those words would include an obligation to pay damages for the taking of the owner's property. Such a reading is necessary to save § 49 from invalidation and will therefore be made.
The fixing of just compensation is the job of the BPU. It has been granted comprehensive authority to regulate the cable television industry. It may, for example:
[I]nstitute all proceedings and investigations, hear all complaints, issue all process and orders, and render all decisions necessary to enforce the provisions of this act.... [N.J.S.A. 48:5A-9(c)].
It is the BPU that will determine the circumstances and incidents of access. It is therefore sensible to use the familiarity it gains with the particular property and the proposed installation to fix compensation, in the same or a later proceeding. It can proceed much as it does in cases arising under N.J.S.A. 48:5A-20. In such cases, the BPU has the authority to order joint use of poles, lines or other equipment by a franchised cable company *271 and another public utility, to set terms and conditions and to fix reasonable compensation to be paid to the party whose property is ordered to be shared.
The BPU will ultimately decide how best to handle the compensation issue in access cases. I go no further than to hold that the Constitution requires fair compensation to an owner whose property is to be physically occupied by cable television facilities, and that proceedings to fix compensation will be in the BPU in accordance with rules and regulations the BPU will develop for the purpose.

The "Exclusive Service Contract" is Invalid
Finally, plaintiff seeks an order declaring invalid an October 1, 1982 contract between the SMATV corporation and the homeowners' association. In October 1982 the principals of the condominium sponsor owned the SMATV corporation. At that early time in the project, the developer had the right to choose the three members of the governing board of the homeowners' association. N.J.S.A. 46:8B-12.1. It chose three of the principals of the developer and the SMATV corporation.
The contract grants access to the development for installation of an SMATV system and commits the SMATV corporation to undertake that installation and the operation of the system. Among other things, the corporation agrees to provide at least two television outlet connections for each dwelling unit. The association agrees to pay a monthly charge of $6 a unit. The charge will vary in subsequent years in response to changes in a consumer price index. The SMATV corporation specifically disclaims warranty as to any particular level of basic service. Additional services may be made available by the SMATV at the option of individual residents, who will be billed directly therefor. The contract is automatically renewed each year for ten years unless notice to the contrary is given by one of the parties.
There is nothing in the contract fixing the manner in which the association is to distribute the burden of the monthly *272 charges among the dwelling units. Since, however, the association is to pay a per-unit charge for a service to be provided to each unit, it would plainly be duty-bound to distribute the burden among all of the units, either equally or according to the percentage of their respective undivided interests in the common elements, whether or not the residents waive the right to make use of the service. N.J.S.A. 46:8B-17.
There should be no question of the standing of plaintiff to seek a declaration as to the validity of such a contract. It certainly has an interest in the matter. If the contract is valid, it makes it virtually impossible to compete with a cable system that residents have to pay for whether they use it or not. If it is invalid, there is no one but plaintiff to seek a judicial declaration to that effect. The association that signed it is still controlled by the people who own the SMATV corporation. The few residents that have moved into their units have disappearingly small individual stakes in the matter. If prompt challenge is not made by someone, the competitive race for subscribers will have been lost by default. In these circumstances, plaintiff must be given standing to test the validity of the contract.
Defendants offer another argument that plaintiff should not be heard to challenge the contract. They say that plaintiff waited silently while the SMATV was installed at substantial cost and should therefore be estopped from complaining now. There are two answers. First is that the major SMATV investment commitment was made at a time when the Cable Television Act plainly barred proceeding without BPU approval, before any application was made to the BPU, and before the FCC had decided to preempt state regulation of SMATVs. Defendants can not claim the high ground on the basis of that kind of activity. Secondly, if defendants should be entitled to some retroactive benefit of federal preemption, the *273 benefit is limited to the right to compete with franchised CATV systems. It does not include the right to exclude them. Thus, plaintiff's challenge to the contract will be entertained.
The contract is invalid. If it plainly said what it intends, there would be no reasonable question about it. If it flatly required residents to take SMATV service or none at all, it would violate the words and spirit of the FCC's Earth Satellite decision, the sole and complete legal underpinning for the unregulated existence of the SMATV system. It would plainly violate § 49's injunction against barring access to a franchised cable company. By recent amendment, the homeowners' association is one of the entities expressly selected by the legislature for inclusion among those "owners" who are forbidden to bar access by CATVs to tenants.
The contract between these parties has and is intended to have the same effect. Although it is possible for a Concordia resident to decide to pay for two competing cable services, it is unreasonable to suppose that any but the strongest willed of them will do so. The monthly charge levied by the homeowners' association is the functional equivalent of a prohibition of the use of plaintiff's service. Since it attempts and accomplishes what could not be done directly, it must be invalidated. It is therefore not only ineffective to justify barring plaintiff access. It is also void and unenforceable as between the contracting parties. Only by declaring it void can I correct its improper effect on plaintiff and on its ability to compete with defendants' SMATV system.
Plaintiff will submit a form of order for judgment, on notice, denying the motions made by defendants, declaring: the constitutionality of § 49, that § 49 affords Plaintiff the right to apply to the BPU for access to the Concordia condominium community and the invalidity of the October 1, 1982, contract between the SMATV corporation and the homeowners' association.