210 N.J. Super. 626 (1986)
510 A.2d 308
OCEAN CABLEVISION ASSOCIATES, PLAINTIFF,
v.
HOVBILT, INC., DEFENDANT.
Superior Court of New Jersey, Law Division Monmouth County.
Decided January 22, 1986.
*627 Jeffrey L. Reiner for plaintiff, Ocean Cablevision Associates (Meyner & Landis, attorneys).
W. James Mac Naughton for third-party plaintiff Hovbilt, Inc.
Roberta Nan Berkwits for third-party defendant Board of Public Utilities (Irwin I. Kimmelman, Attorney General of New Jersey, attorney).
Cynthia D. Benn for plaintiff/intervenor New Jersey Cable Television Association (Le Boeuf, Lamb, Leiby & MacRae, attorneys).
*628 MILBERG, A.J.S.C.
Plaintiff, Ocean Cablevision Associates (hereinafter "OCA"), is the state-licensed cable television company for Howell Township, Monmouth County, New Jersey. Defendant and third-party plaintiff, Hovbilt, Inc., (hereinafter "Hovbilt"), is the owner and developer of a condominium project known as Surrey Downs.
OCA has been pressing for access to Surrey Downs to install cable television equipment. Following Hovbilt's denial of OCA's request for access in June 1985, OCA filed an access petition with the Board of Public Utilities, (hereinafter "BPU"), on July 15, 1985. Hovbilt answered the petition on August 15, 1985, asserting, among other defenses, that the BPU lacks jurisdiction to hear OCA's access petition.
In addition to the access petition, OCA commenced the present action wherein it seeks injunctive relief and damages at common law and under the New Jersey Antitrust Act for Hovbilt's alleged wrongful refusal to grant OCA access to Surrey Downs. The complaint in this action was filed in the Superior Court, Law Division on October 22, 1985. Hovbilt filed an answer and counterclaim, asserting that this court is the only forum in which OCA's access claim may be properly adjudicated.
OCA's access petition is presently before the Office of Administrative Law (hereinafter "OAL"), at the direction of the BPU. On December 30, 1985, OCA filed a motion for summary disposition and emergent relief permitting it to prewire Surrey Downs. Hearing on OCA's motion for summary disposition is scheduled for January 24, 1986.
On December 17, 1985, Hovbilt filed the present motion seeking an order enjoining OCA from pursuing its access claim before the BPU under the applicable statute, N.J.S.A. 48:5A-49, and the pertinent administrative code provision, N.J.A.C. 14:18-3.10.
*629 On January 9, 1986, Hovbilt filed a third-party complaint against the BPU whereby it seeks to enjoin the BPU from acting on OCA's access petition.
The Attorney General filed an answer to the third-party complaint on behalf of the BPU on January 16, 1986; on the same date the Attorney General filed a motion to dismiss the third-party complaint for lack of subject-matter jurisdiction.
The statute at issue, N.J.S.A. 48:5A-49 (hereinafter § 49) reads in relevant portion:
a. No owner of any dwelling or his agent shall forbid or prevent any tenant of such dwelling from receiving cable television service, nor demand or accept payment in any form as a condition of permitting the installation of such service in the dwelling or portion thereof occupied by such tenant as his place of residence, nor shall discriminate in rental charges or otherwise against any such tenant receiving cable television service; provided, however, that such owner or his agent may require that the installation of cable television facilities conform to all reasonable conditions necessary to protect the safety, functioning, appearance and value of the premises and the convenience, safety and well-being of other tenants; and further provided, that a cable television company installing any such facilities for the benefit of a tenant in any dwelling shall agree to indemnify the owner thereof for any damage caused by the installation, operation or removal of such facilities and for any liability which may arise out of such installation, operation or removal.
b. For purposes of this section:
(1) "Owner" includes, but is not limited to, a condominium association and housing cooperative, and "owner of any dwelling or his agent" includes, but is not limited to, a mobile home park owner or operator.
(2) "Condominium association" means an entity, either incorporated or unincorporated, responsible for the administration of the form of real property which, under a master deed, provides for ownership by one or more owners of individual units together with an undivided interest in common elements appurtenant to each unit.
In the only heretofore published decision construing this provision, Princeton Cablevision, Inc. v. Union Valley Corp., 195 N.J. Super. 257 (Ch.Div. 1983), Judge Cohen upheld the validity of § 49 against a constitutional challenge by a condominium association which sought to deny access to a local, state-licensed cable television franchise in favor of service by a satellite master antenna television (SMA TV) system owned by *630 the principals of the condominium developer.[1] The condominium association contended that § 49 is unconstitutional because, the association asserted, it requires landowners to grant interests in their property  access for cable television franchises  without just compensation. Id. at 269. Judge Cohen rejected the constitutional challenge, stating:
It is the court's duty to uphold the validity of a statutory provision if invalidation can be avoided. And, if it is necessary to engage in "judicial surgery" to save an ailing enactment, and if it appears that the legislature would have wanted the statute to survive, it is the court's duty to operate. Callen v. Sherman's, Inc., 92 N.J. 114 (1983); Right to Choose v. Byrne, 91 N.J. 287 (1982). The surgery can take the form of excision of an offending provision or supplying a constitutionally required one. There is nothing novel about engrafting a requirement of just compensation onto a statute that authorizes what amounts to a taking. Lomarch Corp. v. Mayor of Englewood, 51 N.J. 108 (1968).
In early language, § 49 prohibits an owner from demanding or accepting payment for permitting installation of cable service. It is plain from the context that the principal focus is on payment from tenants. In later language, § 49 requires the franchised company
"to indemnify the owner .... for any damage caused by the installation, operation or removal of [cable] facilities ..."

A generous reading of those words would include an obligation to pay damages for the taking of the owner's property. Such a reading is necessary to save § 49 from invalidation and will therefore be made. [Id. at 270; emphasis supplied]
Accordingly, Judge Cohen held that the condominium association had no right to bar access by the cable television company. Id. at 269, 273.
Judge Cohen, however, did not cease his analysis there, but addressed the issue as to who should fix just compensation in access cases:

*631 The fixing of just compensation is the job of the BPU. It has been granted comprehensive authority to regulate the cable television industry. It may, for example:
"[I]nstitute all proceedings and investigations, hear all complaints, issue all process and orders, and render all decisions necessary to enforce the provisions of this act ... [N.J.S.A. 48:5A-9(c)]."
It is the BPU that will determine the circumstances and incidents of access. It is therefore sensible to use the familiarity it gains with the particular property and the proposed installation to fix compensation, in the same or a later proceeding. It can proceed much as it does in cases arising under N.J.S.A. 48:5A-20. In such cases, the BPU has the authority to order joint use of poles, lines or other equipment by a franchised cable company and another public utility, to set terms and conditions and to fix reasonable compensation to be paid to the party whose property is ordered to be shared.
The BPU will ultimately decide how best to handle the compensation issue in access cases. I go no further than to hold that the Constitution requires fair compensation to an owner whose property is to be physically occupied by cable television facilities, and that proceedings to fix compensation will be in the BPU in accordance with rules and regulations the BPU will develop for the purpose. [Id. at 270-271; emphasis supplied]
Following the decision in Princeton Cablevision, supra, the BPU held rule-making hearings which culminated in the promulgation of its access/just compensation regulation, N.J.A.C. 14:18-3.10. This regulation, in essence, provides that "[a] cable television operator shall award [$1] to a fee owner ... in consideration of the access granted pursuant to [§ 49 of the Cable Television Act]," N.J.A.C. 14:18-3.10(a), except that, in a "contested case," the fee owner "may apply to the Office of Cable Television for just compensation," in which event "[t]he owner has the burden of proof to clearly demonstrate" that greater compensation should be paid. N.J.A.C. 14:18-3.10(d). In such an administrative application, the fee owner  and the term "fee owner" includes a condominium association, N.J.A.C. 14:18-3.10(a); N.J.S.A. 48:5A-49b  must "clearly satisfy certain stated criteria, the specifics of which need not be recited here.
By this motion, Hovbilt seeks an order directing OCA to cease proceeding on its access petition before the BPU and compelling OCA to prosecute its access claim, instead, by way of a condemnation action in this court pursuant to the Eminent *632 Domain Act, N.J.S.A. 20:3-1 et seq. Essentially, Hovbilt challenges the constitutional validity of N.J.A.C. 48:18-3.10 and, hence, the authority of the BPU and its designated officers to fix compensation in access cases. Hovbilt contends that the decision in Princeton Cablevision, Inc. v. Union Valley Corp., supra, is unsound and grants by implication a power  the authority to fix compensation for a taking  which, if granted at all, must be conferred explicitly by the Legislature. Yet Hovbilt argues that the Legislature could not constitutionally grant this power to the BPU. Relying chiefly on the decision of the United States Court of Appeals for the Eleventh Circuit in Florida Power Corp. v. FCC, 772 F.2d 1537 (11 Cir.1985), Hovbilt asserts that, under the Fifth and Fourteenth Amendments, the determination of just compensation is a judicial function which cannot be wrested from the courts and bestowed upon an administrative agency. In sum, Hovbilt submits that OCA's access claim presents a "taking," the validity of which and the compensation therefor can only be resolved in a condemnation proceeding.
Both OCA and the Attorney General, on behalf of the BPU, assert that this court does not have jurisdiction to review the validity of N.J.A.C. 14:18-3.10, that exclusive jurisdiction to review an action or regulation of a State administrative agency lies in the Appellate Division under R. 2:2-3(a)(2). Moreover, they argue that Hovbilt must challenge the jurisdiction of the BPU directly before that agency, with direct review by the Appellate Division. For these reasons, the BPU has cross-moved to dismiss the third-party complaint.
At oral argument, the New Jersey Cable Television Association (hereinafter the "Association"), made a motion for leave to intervene as a party plaintiff pursuant to R. 4:33-2. This case has been pending for three months; the Association's intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. See Looman Realty Corp. v. Broad St. Nat. Bank of Trenton, 74 N.J. Super. 71, 78 *633 (App.Div. 1962), certif. den. 37 N.J. 520 (1962); Vicendese v. J-Fad, Inc., 160 N.J. Super. 373, 381 (Ch.Div. 1978). Clearly, the Association's interest or claim has a question of law in common with the existing action. Ibid.; R. 4:33-2. Moreover, intervention is properly allowed where, as here, an important public issue is presented to the court. Evesham Tp. Bd. of Adj. v. Evesham Tp., 86 N.J. 295, 299 (1981). The Association's motion for leave to intervene as a party plaintiff is granted.
I now proceed to the focus of this opinion, to wit: Hovbilt's motion to compel a condemnation and the opposing contentions challenging the jurisdiction of this court to grant such relief.
I find that this court lacks jurisdiction to adjudicate Hovbilt's motion and counterclaim for an inverse condemnation and an injunction against further proceedings before the BPU.
I am satisfied from a review of the record and the arguments of counsel that Hovbilt is not challenging the constitutional validity of § 49; rather, it is the BPU's regulation, N.J.A.C. 14:18-3.10, which is the subject of attack, for it is by that regulation that the BPU purports to determine "just compensation" for access to private property by cable television franchises, not § 49. As Judge Cohen acknowledged in Princeton Cablevision, supra, § 49 does not designate what body  be it a creation of the judiciary, the Legislature or the executive  will fix compensation for the "taking," 195 N.J. Super. at 270; he merely stated that fair compensation is required and that proceedings to fix compensation "will be in the BPU in accordance with rules and regulations the BPU will develop for the purpose." Id. at 271.
Nothing in Judge Cohen's decision in Princeton Cablevision, supra, is binding on this court. Nevertheless, it is clear that N.J.A.C. 14:18-3.10 was inspired by his above-quoted directive. It is equally clear, however, that the validity of this regulation must be challenged in the Appellate Division, not in this court.
*634 Rule 2:2-3(a) provides that appeals may be taken to the Appellate Division as of right
(2) to review final decisions or actions of any state administrative agency or officer, and to review the validity of any rule promulgated by such agency or officer excepting matters prescribed by R. 8:2 (tax matters) and matters governed by R. 4:74-8 (Wage Collection Section appeals), except that review pursuant to this subparagraph shall not be maintainable so long as there is available a right of review before any administrative agency or officer, unless the interest of justice requires otherwise; [emphasis supplied]
The rule contemplates that every proceeding to review the action or inaction of a State administrative agency, as well as the validity of rules and regulations adopted by a State agency, must be by appeal to the Appellate Division. Pascucci v. Vagott, 71 N.J. 40, 52 (1976). Such is the exclusive mode of review of the regulation at issue.
Thus, the Appellate Division is the proper, and exclusive, forum for a determination as to whether the BPU has exceeded its statutory authority in promulgating N.J.A.C. 14:18-3.10, see Delaney v. Penza, 151 N.J. Super. 455, 458 (App.Div. 1977), and, correlatively, whether the regulation fails on constitutional grounds, see Patterson Redevelopment Agency v. Schulman, 78 N.J. 378, 386-388, cert. den. 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979).
Yet Hovbilt must first exhaust these challenges in the BPU. See R. 2:2-3(a)(2). The BPU's interpretation of its own regulation may obviate the need for judicial adjudication of constitutional or statutory claims. Patterson Redevelopment Agency v. Schulman, supra, 78 N.J. at 387. Although the issue of compensation may be one of constitutional dimensions and the BPU is without jurisdiction to decide constitutional claims, the mere presence of constitutional implications does not abrogate the exhaustion requirement. Ibid. The claim should first be presented to the BPU, along with relevant factual presentations to ensure an adequate record on appeal. Id. at 388. If the final decision on OCA's access petition and on the amount of Hovbilt's compensation is adverse to it, Hovbilt *635 may seek review of these challenges on its appeal as of right to the Appellate Division pursuant to R. 2:2-3(a).
On the other hand, Hovbilt may seek review of its challenge to the jurisdiction of the BPU either by application for leave to appeal to the Appellate Division, R. 2:5-6(a), or on its appeal as of right from a final adverse decision by the BPU, R. 2:2-3(a). See Princeton First Aid & Rescue Squad v. Division on Civil Rights, 124 N.J. Super. 150, 152-153 (App.Div.), certif. den. 63 N.J. 555 (1973). The challenge, however, must first be pursued in the BPU proceedings. Ibid.; see FPC v. Louisiana Power & Light Co., 406 U.S. 621, 647, 92 S.Ct. 1827, 1841, 32 L.Ed.2d 369 (1972).
Hovbilt's motion to enjoin OCA from pursuing its access petition before the BPU and to compel OCA to institute condemnation proceedings is denied. Furthermore, Hovbilt's counterclaim to compel OCA to commence condemnation proceedings is dismissed without prejudice to its reassertion should the Appellate Division determine that the BPU lacks jurisdiction to fix compensation for OCA's access to Surrey Downs.
The BPU's motion to dismiss the third-party complaint for lack of jurisdiction is also granted; such dismissal, however, is again without prejudice pending the resolution of the jurisdictional issues on appeal, if any, to the Appellate Division.
OCA shall submit a proposed order denying Hovbilt's motion for injunctive relief and its motion to compel OCA to commence a condemnation action. The order shall also reflect the dismissal of Hovbilt's counterclaim without prejudice in accordance with this opinion.
The BPU shall submit a proposed order dismissing the third-party complaint without prejudice in accordance with this opinion.
Counsel for the Association shall submit a proposed order granting its intervention in this action pursuant to R. 4:33-2.
NOTES
[1] Similarly, OCA claims that Hovbilt has denied OCA access to Surrey Downs because it desires to operate its own SMA TV system on the site without competition.

SMA TV systems, unlike the cable antenna television (CA TV) system which OCA wishes to install, are exempt from state regulation under New Jersey's Cable Television Act, N.J.S.A. 48:5A-1, et seq., but are subject to exclusive, preemptive regulation by the Federal Communications Commission (FCC). In re Earth Satellite Communications, Inc. CSR-2347, F.C.C. 83-526 (1983); Princeton Cablevision, Inc. v. Union Valley Corp., supra, 195 N.J. Super. at 264.