WHITE BIRCH FARMS, PLAINTIFF, v. DR. RALPH E. GARRITANO, DEFENDANT.

Superior Court of New Jersey
Law Division Monmouth County

Decided June 4, 1987.

*Jeffrey R. Pocaro* for plaintiff (*Ralph J. Pocaro*, attorney).

*William D. McGovern* for defendant (*Tanner, McGovern and Verga*, attorneys).

SELIKOFF, J.S.C.

This matter is before the court on the return date of an order to show cause on plaintiff's application, requiring defendant to show cause why an order should not be entered permitting plaintiff to proceed with the sale of defendant's horses pursuant to *N.J.S.A.* 2A:44–51 and 52, the Livery Stables, And Boarding And Exchange Stable Keepers Act (the Stableman's Lien Act, referred to hereafter as the Act). The constitutionality of the public sale provision of the Act is at issue.

Plaintiff's verified complaint was filed May 6, 1987. Defendant filed an answer and counterclaim May 18, 1987 demanding refund of sums paid to plaintiff as a result of unauthorized breeding of his horse, and to direct plaintiff to pay stud fees attendant to the breeding.

The Stableman's Lien Act[1] provides that

> Every keeper of a livery stable or boarding and exchange stable, shall have a lien on all animals left with him in livery, for board, sale or exchange and upon all carriages, wagons, sleighs and harness left with him for storage, sale or exchange for the amount due such proprietor for the board and keep of such animal and also for such storage, and shall have the right, without process of law, to retain the same until the amount of such indebtedness is discharged.

> Property retained by the propietor under this article shall be sold at public auction, after the expiration of 30 days from the date of such retention.

> Notice of the sale shall be first published once in each of the 2 weeks preceding the day of the sale in a newspaper circulating in the municipality in which the stable is situated, and 5 days notice of the sale shall be given by posting a copy of the notice in 5 public places in the municipality.

> The proceeds of sale after the deduction of the expenses thereof shall first be applied to the payment of the indebtedness, and the balance, if any, shall be paid to the owner of the property, or his representative. The balance, if not claimed by the owner within 60 days after the sale, shall be paid to the municipality, in which the stable is situated, for the support of the poor.

N.J.S.A. 2A: 44–51, –52.

Plaintiff is a business entity located in Allentown, New Jersey. From the affidavits submitted, it appears that in May of 1984 the defendant placed with plaintiff for boarding the mare Lenape Lil Feather. The board rate was $12.00 per day plus incidental farrier, veterinary, and miscellaneous expenses. In June of 1985 the mare was bred and a colt foaled in May or June of 1986. The mare was bred again in 1986 without success, and bred a third time in February, 1987 and presently is in foal. Defendant contends the breeding was not authorized by him, which is contested by the affidavits of two of plaintiff's employees.

Plaintiff contends defendant has fallen behind in board payments, calculated at $24.00 per day for mare and colt, in the amount of $8,899.00 as of May 1, 1987.

---

[1] The Act has been the subject of only one prior opinion, *Sullivan v. Clifton*, 55 *N.J.L.* 324 (E & A 1893), wherein Justice Van Syckel held the lien arising thereunder is subsequent and subject to a prior recorded mortgage on the horse.

It further appears that defendant sought to remove the mare in foal and her colt from the Allentown farm, a move resisted by plaintiff which asserted its lien and scheduled a sale of the mare and colt for June 1, 1987, pursuant to the Act.

Defendant is willing to pay any amount rightfully due plaintiff and has deposited $4,000 in his attorney's trust account for that purpose. Defendant also contends that he should be able to mitigate damages by removing his horses from plaintiff's possession and boarding them elsewhere at a lower rate.

Plaintiff seeks prior judicial approval of the sale, conceding the Act is constitutionally infirm in failing to provide defendant with notice and an opportunity for a judicial hearing prior to divestment of his property. Plaintiff contends, however, these deficiencies can be cured by "judicial surgery" by engrafting R. 4:52 procedures upon the statute, a method used by our Supreme Court in *Callen v. Sherman's Inc.*, 92 *N.J.* 114 (1983). In *Callen* such "judicial surgery" was applied to save *N.J.S.A.* 2A:33–1 *et seq.*, the commercial distraint statutes, from invalidation on due process grounds.

Defendant likens the Stableman's Lien Act to *N.J.S.A.* 2A:44–20 *et seq.*, the Garage Keepers Lien Act, and argues the Act is unconstitutional and cannot be cured, relying on *Whitmore v. N.J. Division of Motor Vehicles*, 137 *N.J.Super.* 492 (Ch.Div. 1975).

Plaintiff takes the position the Act is a more straight-forward violation of due process than the Garage Keeper's Lien Act since unlike *N.J.S.A.* 2A:44–20 *et seq.* the Act makes no provision for posting an amount of money to forstall the sale and obtain a hearing. Defendant argues that invalidation of the Garage Keeper's Lien Act, specifically with reference to the posting of claimed amounts due or double bonds, prevents this court from engrafting upon the Act any like requirements.

In *Whitmore*, Judge Furman held *N.J.S.A.* 2A:44–20 *et seq.* unconstitutional on Fourteenth Amendment due process grounds in that the statutes failed "to afford to all automobile

owners the opportunity to be heard judicially prior to divestment of title." 137 *N.J.Super.* at 500. This was so because under the statutory scheme as enacted, an automobile owner whose vehicle became subject to a garage keeper's lien would be able to avoid a mandatory public sale by posting either the full amount claimed to be due plus costs or a bond in double the amount claimed and costs, after which the garage keeper would assert his lien in court and a hearing would be held. Judge Furman reasoned the statutory remedy of a pre-sale judicial hearing was available only to those automobile owners financially able to post the required amounts, and thus "failed to afford to *all* automobile owners to be heard ..." *Id.* (emphasis supplied).

Three issues are, therefore, presented. First, whether the Stableman's Lien Act is constitutional. Second, whether this court could require defendant to post the amount claimed as due or an otherwise sufficient bond in order to avoid the sale, regain possession and obtain a hearing. Third, if the statute is unconstitutional, whether this court should perform "judicial surgery" as done on the distraint statutes in *Callen,* and require stablemen seeking the remedy of public sale to proceed under the procedural requirements pertaining to interlocutory relief set forth in R. 4:52.

Implementation of *N.J.S.A.* 2A:44–52 by a stableman is action by force of state statute and not common law. Therefore that section of the Act is subject to being struck down under the Fourteenth Amendment to the United States Constitution if in derogation of the right to notice and an opportunity for a hearing, prior to deprivation of a protected interest. *Whitmore,* 137 *N.J.Super.* at 497 and cases cited.

The Stableman's Lien Act does not provide a horse owner with notice or an opportunity to be heard prior to a statutorily authorized, privately conducted public sale of liened property. There is thus an unconstitutional deprivation of a

significant property interest without due process of law. *Callen,* 92 *N.J.* at 133.

■ This court cannot perform "judicial surgery" by engrafting upon the Act a provision that the sale could be avoided by an owner's posting of the claimed amount of the bond for two reasons. First, the court would be engaging in legislation by creating a remedy not textually apparent, constituting an exercise of power reserved to the Legislature. Second, that remedy would not be curative of the constitutional infirmities since it simply would not be available to those owners without sufficient funds to advance the disputed sum. *Whitmore,* 137 *N.J.Super.* at 499, 500.

■ However, it is possible to read the Act in a manner consistent with due process requirements. The methodology is set forth in *Callen,* 92 *N.J.* at 134–137. "To cure the constitutional deficiencies of the statute, we need only read it in conjunction with the procedural requirements of R. 4:52 pertaining to interlocutory relief." *Id.* at 135 (footnote omitted). Whether engrafting those procedural requirements upon the statute should be done "depends on whether the Legislature would have wanted the statute to survive." *Id.* at 134, quoting *Right to Choose v. Byrne,* 91 *N.J.* 287, 311 (1982). In that vein, this court takes notice of what aptly may be called the "Horse Industry" in New Jersey. The Act has been in existence for over 100 years. This court is of the opinion the Legislature would prefer to preserve the stableman's remedy so long as it is applied in conformity with modern notions of due process. There exists ample authority for the "judicial surgery" contemplated here. See *In re Promulgation of Guardianship Services Reg.* 103 *N.J.* 619, 638–639 (1986); *N.J. Parole Bd. v. Byrne,* 93 *N.J.* 192, 212 (1983); *Wrightstown Bor. v. Medved,* 193 *N.J.Super.* 398, 404 (App.Div.1984); and *Princeton Cablevision Inc. v. Union Valley Corp.,* 195 *N.J.Super.* 257, 270 (Ch.Div.1983). This court adopts the reasoning set forth in *Callen* and holds that prior to any sale under the Act the lienor

must first proceed under R. 4:52 by order to show cause, supported by verified complaint or affidavit. Where, as here, a *bona fide* dispute exists as to the amount due and related matters, then a hearing date shall be fixed on the return date of the order to show cause to determine the respective rights of the parties.

Plaintiff having complied with R. 4:52-1 and defendant having filed answer and counterclaim the matter will be scheduled for a hearing, date to be set.

Counsel for plaintiff will submit an appropriate order under the Five (5) Day Rule.