609 A.2d 498

IN THE MATTER OF THE PETITION OF THE TOWNSHIP
OF MANSFIELD FOR SOLID WASTE HOST
COMMUNITY BENEFITS.

Superior Court of New Jersey
Appellate Division

Submitted June 10, 1992—Decided July 6, 1992.

Before Judges KING, DREIER, GRUCCIO.

*Stephen J. Mushinsky,* Burlington County Solicitor, attorney for appellant (*Carole A. Quattlander* on the brief).

*Robert J. Del Tufo,* Attorney General, attorney for respondent Department of Environmental Protection and Energy (*James Eric Andrews* and *Gregory Eisenstark* on the brief).

*John Ford Evans*, attorney for respondent Township of Mansfield.

The opinion of the court was delivered by

GRUCCIO, J.A.D.

This appeal is taken from a decision of the Board of Public Utilities (BPU) to review the reasonableness of a host community benefit pursuant to *N.J.S.A.* 13:1E–28. Here, we decide the jurisdictional span of the DEPE in similar matters.[1]

The Burlington County Board of Chosen Freeholders (County) owns and operates a landfill for the disposal of sanitary waste. The landfill is located in both Mansfield and Florence Townships and began operations on February 1, 1989. The Solid Waste Management Act, *N.J.S.A.* 13:1E–1 to –207, sets forth that both Townships are entitled to a host community benefit for receiving solid waste. *N.J.S.A.* 13:1E–28.[2]

On February 1, 1989, the County awarded a franchise for solid waste disposal to the Burlington County Resource Recovery Complex Landfill, and landfill operations began that day. The County agreed with Florence Township (Florence) to pay it a benefit of $1.16 per ton for all solid waste accepted at the landfill. The County was unable to reach a similar agreement with Mansfield Township (Mansfield) and, as a result, paid it $1 per ton for 1989 and 1990.

---

[1]Pursuant to Reorganization Plan No. 002–1991, which became effective in August 1991, all responsibility and authority formerly vested in the Board of Public Utilities for the regulation of solid waste has been transferred to the Department of Environmental Protection and Energy (DEPE). *See N.J.S.A.* 13:1D–1.

[2]Any municipality containing a landfill facility is entitled to an "annual economic benefit not less than the equivalent of $1.00 per ton of solids on all solid waste accepted for disposal at the sanitary landfill...." *N.J.S.A.* 13:1E–28(a). Such benefit is made payable pursuant to an adopted and approved district solid waste management plan. *Ibid.*

In November 1990, Mansfield filed a petition with the BPU requesting that it establish a benefit for the Township and that it direct the benefits to be made retroactive to February 1, 1989. Mansfield requested a $12 per ton benefit, and asked that the BPU add an escalation factor to the benefit amount.

In February 1991, the County filed a motion to dismiss Mansfield's petition on the basis that the BPU lacked jurisdiction to approve a host community benefit in the absence of an agreement between the County and Mansfield. The BPU later denied the County's motion for dismissal on the basis that the lack of an agreement between the owner of a landfill and a host community did not prohibit it from considering a host community benefit in excess of the statutory minimum. The BPU directed its staff to review Mansfield's petition and consider the reasonableness of the proposed benefit.

In September 1991, the County moved before the DEPE for a stay of the BPU decision and also filed a notice of motion for leave to appeal the BPU's order. The DEPE granted the County's request for a stay, pending the outcome of its motion for leave to appeal. We denied the County's motion and, thereafter, the County filed a motion for reconsideration.[3]

In February 1992, we granted the DEPE's motion to file a brief, the County's motion for reconsideration and granted leave to appeal.

The County contends that the DEPE[4] lacks jurisdiction to review its payment plan with Mansfield. Specifically, the County claims that the previous legislative authority in the BPU to

---

[3]The DEPE filed a motion for leave to file a brief on the County's motion for reconsideration, a certification of counsel in support of the motion and a merits brief on the County's motion for leave to appeal. The DEPE was careful to highlight, however, that it did not support the merits of the County's case and reaffirmed its order of August 16, 1991, in which it determined that it had jurisdiction to hear Mansfield's petition.

[4]For purposes of this opinion, unless otherwise specifically denoted, "DEPE" will also represent the BPU/Board of Regulatory Commissioners.

set reasonable payments, in the absence of an express agreement between a landfill owner and the host community, has been purposefully rescinded, and thus the DEPE wrongly interceded here.

The present version of *N.J.S.A.* 13:1E–28 sets forth that a community which hosts a landfill for solid waste will be paid either in currency or in kind for the use of its land by the owner of the landfill. The statute establishes $1 per ton as the minimum payment any municipality will receive. It also sets forth that the provision of benefits in lieu of money is subject to the DEPE's approval. *N.J.S.A.* 13:1E–28(a).

There is presently no specific requirement for a formal agreement between the owner of the landfill and the municipality, nor any mechanism by which to establish the benefit. The original version of the statute, however, required an agreement between the landfill owner and the host community as a condition precedent to receiving the benefit.

The present Act omits former text which provided that if no formal agreement could be reached between the municipality and the owner of the landfill, then the commissioner of the DEPE could fix the terms and benefits which he deemed appropriate. The County contends that this omission was deliberate and calculated to strip the DEPE of its ability to review host municipality fees.

An overall reading of the statute, however, indicates that the Legislature intended to vest more, rather than less discretion in the DEPE's governance of host municipality fees. For instance, the present statute lacks the agreement requirement on the benefit amount altogether. This omission, coupled with the lack of instruction on how to establish the benefit, leads to the conclusion that the Legislature intended to allow the DEPE wide discretion in determining the reasonableness of the benefit amount, because any arrangement, not merely a formal agreement, is subject to the DEPE's review. This conclusion is supported by the notion that a formal agreement may limit the

DEPE's ability to set equitable rates. An analysis of other community host statutes is valuable here.

*N.J.S.A.* 13:1E–28.1 is the host benefit statute for municipalities which host solid waste transfer stations. This statute originally provided that a benefit would be awarded pursuant to an agreement drawn between the parties. The current version, however, authorizes payment pursuant to an agreement or by order of the DEPE. *N.J.S.A.* 13:1E–28.1(a). The County contends that if the Legislature had desired to amend *N.J.S.A.* 13:1E–28 to give the DEPE greater authority, it would have used language similar to that in *N.J.S.A.* 13:1E–28.1. The County overlooks, however, that *N.J.S.A.* 13:1E–28 no longer requires an agreement and thus, the DEPE is not called upon to fill in the gaps in the event that an agreement is not drawn. Though the DEPE is specifically delegated this authority in *N.J.S.A.* 13:1E–28.1, its role in *N.J.S.A.* 13:1E–28 is not thereby restricted. *N.J.S.A.* 13:1E–28.1 was amended to assure that the DEPE would take action in the absence of the required agreement. Since no agreement is required in *N.J.S.A.* 13:1E–28 the corresponding role of the DEPE is not necessary. The lack of an articulated role in that context, however, does not preclude DEPE review of host community benefits.

Similarly, *N.J.S.A.* 48:13A–5.1, which governs host community benefits for municipalities in which incinerators are located, allows for negotiation between the parties, but does not specifically require an agreement. It provides that "[a] municipality may negotiate with the person holding the franchise for a resource recovery facility or the contracting unit, or both as the case may be, for an amount exceeding the amount provided for in this section." This statute was simultaneously enacted with *N.J.S.A.* 13:1E–28 in 1985, yet only the former explicitly provides for negotiation. Since the statutes involve similar subject matter, but have contrasting language, the legislative intent to require negotiations must not apply to permanent landfill sites, but only incinerators and temporary landfill stations. *See Malone v. Fender,* 80 *N.J.* 129, 402 *A.*2d 240 (1979). Again,

this omission in *N.J.S.A.* 13:1E–28 may have been intended to allow the DEPE latitude in properly regulating host fees without altering the terms of a formal agreement.

A limitation of the DEPE's review power in host community fees simply is not discernable from a reading of *N.J.S.A.* 13:1E–28 or a combined reading of the host community statutes. Moreover, the integration of the Board of Regulatory Commissioners and the DEPE only strengthens DEPE's broad review powers, as the unification was specifically intended to "advance a coordinated approach to environmental and utility regulation and energy planning. . . ." *N.J.S.A.* 13:1D–1.

The specified purpose of this departmental unification is supported by DEPE's action in this case. The payment scheme between the County and Mansfield was in need of review, since the township was receiving only the statutory minimum for storing solid waste within its limits. Apparently, the County would have us rule that no review process is applicable at all. It postures that the sole alternatives available to Mansfield are the methods of payment listed in the statute. This inequitable precedent, however, would allow landfill owners to refuse negotiations and thereby pay only the amount minimally required.

The Board of Regulator's articulated role in solid waste management was to determine the reasonableness of host community fees by applying an economic litmus test. In order to satisfy this obligation, the DEPE now must have the ability to review agreements, even if they are not memorialized in a formal writing. The existence of any payment scheme in the arena of solid waste disposal is sufficient to grant jurisdiction in the DEPE. The requirement of a written agreement belies the legislative purpose of the DEPE, and we reject it.

This conclusion is supported by the sole interpretation of the BPU's solid waste responsibilities set forth in *In re Hackensack Meadowlands Dev. Comm'n,* 233 *N.J.Super.* 324, 558 *A.*2d 1344 (App.Div.1989).[5]  There, Judge Gaulkin determined

---

[5]*In re Hackensack* was decided prior to the union of the BPU and the DEPE.

that a host community benefit in excess of the statutory minimum may not be imposed, except upon a prior determination of the BPU that the resultant rates passed on to the landfill users were just and reasonable. *Id.* at 327, 558 *A.*2d 1344. He explained that, pursuant to the Solid Waste Utility Control Act of 1970, *N.J.S.A.* 48:13A–1 to –13 (SWUCA), the BPU was empowered to make rules, regulations and orders for regulating economic aspects of the solid waste disposal and collection industry. *N.J.S.A.* 48:13A–4. The BPU was also empowered to adjust rates which it deems excessive or unreasonable. *N.J.S.A.* 48:13A–7(b). Indeed, our Supreme Court stated that the BPU should observe the interactions of the market place to determine the reasonableness of the rates. *In re Application of Bor. of Saddle River,* 71 *N.J.* 14, 25–26, 362 *A.*2d 552 (1976).

Recognizing the obscurity of *N.J.S.A.* 13:1E–28, and relying on the Supreme Court's expansive interpretation of the BPU's role, we determined that BPU's responsibility of setting rates which are reflective of the economy would be "severely compromised" if it could not determine the reasonableness of host community benefits. *In re Hackensack Meadowlands Dev. Comm'n, supra,* 233 *N.J.Super.* at 334, 558 *A.*2d 1344. Although specifically declining to determine whether the BPU may establish a benefit in the absence of an agreement with the landfill owner, *id.* at 331 n. 3, 558 *A.*2d 1344, we held that BPU would lose substantial control over its delegated obligation to oversee the economics of solid waste disposal if it could not determine the reasonableness of an increase in a host community fee. *Id.* at 334, 558 *A.*2d 1344.

We concluded that the BPU need not pursue traditional ratemaking standards alone, but rather should have greater flexibility in determining the reasonableness of host community fees. *Ibid.* Judge Gaulkin stated:

[W]e [will not] presume to fix standards or procedures for BPU to follow in determining whether to grant its "approval" under *N.J.S.A.* 13:1E–28(a). BPU

is best able to decide, at least in the first instance, how best to address such questions. *Cf. Princeton Cablevision, Inc. v. Union Valley Corp.,* 195 *N.J.Super.* 257, 271 [478 *A.*2d 1234] (Ch.Div.1983).

*Id.* at 335, 558 *A.*2d 1344.

Although the issue now before us was not addressed specifically in *In re Hackensack,* the tenor of that opinion makes clear that BPU, now DEPE, was called upon and is expected to play an active role in the determination of host community benefits. Moreover, the opinion crystallizes the wide discretion intended to be vested in the DEPE, then BPU, and the expertise of its members. As noted there, "[t]he broad authority granted to BPU by the SWUCA should not be given a cramping construction." *Id.* at 333, 558 *A.*2d 1344.

Here, the DEPE, as the authorized successor agency, properly determined that review of the payment arrangement between the County and Mansfield was necessary. It stated that its combined review of the statutes and public policy compelled it to review this application in the interest of consistency in host community benefits. This conclusion is well-reasoned, consistent with the Legislature's intent that the DEPE have broad discretion and review powers, and, therefore, is affirmed.

Affirmed.