80 N.J. Super. 380 (1963)
193 A.2d 861
RICHARD E. SKINNER, PLAINTIFF-RESPONDENT,
v.
ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF CHERRY HILL, AND BOARD OF COMMISSIONERS OF THE TOWNSHIP OF CHERRY HILL, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 1963.
Decided September 26, 1963.
*382 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Warren C. Douglas argued the cause for appellants.
Mr. William C. Davis argued the cause for respondent (Messrs. Starr, Summerill & Davis, attorneys; Mr. Davis of counsel).
The opinion of the court was delivered by KILKENNY, J.A.D.
Defendants, municipal boards of the Township of Cherry Hill, appeal from a judgment of the Law Division, ordering the township building inspector and zoning officer to issue a building permit to plaintiff, who indulges in the hobby of radio reception and transmission, for the erection of a radio tower and antenna, not to exceed 100 feet in height, on plaintiff's premises in a residential zone of the township, in accordance with a plan submitted in evidence. The judgment requires plaintiff to "comply with all other applicable ordinances of said Township."
Plaintiff's application to the local building inspector and to the local board of adjustment had sought permission to erect a tower and antenna of a total height of 102 feet, 8.5 inches, of which the tower height would be 81 feet, 2.5 inches. He does not cross-appeal from the Law Division's limitation of the height of the tower and antenna to 100 feet.
The building inspector had refused the permit because the proposed location of this radio tower would be in a residential *383 zone and he deemed such use not permissible in that zone.
On appeal to the board of adjustment, plaintiff maintained that (1) the proposed radio tower and antenna was an accessory use permitted in a residential zone; (2) the Federal Government, by the issuance of rules and regulations pertaining not only to the erection and maintenance of radio antennas but also to the licensing of radio amateurs, had pre-empted this field of governmental regulation so as to preclude the municipal government from intruding upon this subject matter; (3) in the alternative, if his first two positions were not upheld by the board, a variance from the terms of the ordinance should be granted to permit the construction. The board of adjustment ruled adversely to plaintiff, finding that the proposed tower was not an accessory use "because an antenna of this nature is not customarily incidental to a dwelling in a residential neighborhood"; that there are areas in the township where an antenna of this type could be constructed, and that the contention that the local board did not have jurisdiction over this matter because the Federal Government had already pre-empted this field was without basis in law and fact. It grounded its refusal to grant the variance upon plaintiff's failure to establish any undue hardship, because there are areas in the township where an antenna of this nature could be constructed; that an antenna of this nature would depreciate property values of the abutting properties and would damage neighboring properties and possibly cause physical injury, if it were to fall; and that "this antenna with its connecting guide lines would create an attractive nuisance for the children in the neighborhood." For these reasons, it found that the granting of the requested variance would substantially impair the intent and purpose of the zoning ordinance and accordingly denied the application.
The primary question involved herein is whether a radio tower for use by an amateur as a hobby constitutes an "accessory use" within a residential zone so as to be *384 permissible without the need for a variance. The Law Division so found, relying upon Wright v. Vogt, 7 N.J. 1 (1951). We agree with its conclusion as to that aspect of the case, because Wright v. Vogt expressly so declared, holding that an amateur's radio tower, used by him in the pursuit of his hobby, was an accessory use and "customarily incidental" to the enjoyment of a residential property. The ordinance in question permits accessory uses in a residential zone and defines an accessory use or building as: "A subordinate use or building the purpose of which is customarily incidental to the main use or building and on the same lot." Similar language involved in the ordinance in Wright v. Vogt was interpreted to permit a radio tower and antenna, 60 feet in height. See also Borough of Chatham v. Donaldson, 69 N.J. Super. 277, 282 (App. Div. 1961), in which we said:
"Use by a family of a home under our customs includes more than simple use of a house and grounds for food and shelter. It also includes its use for private religious, educational, cultural and recreational advantages of the family * * *. Pursuit of a hobby is clearly customarily a part of recreational activities. As long as the pursuit thereof is not of such a nature, or to such an extent, as to impair the residential character of the neighborhood, it cannot be supposed a zoning ordinance was intended to prevent it."
Our neighboring states take opposite views as to whether these radio towers used by amateurs to indulge their hobby constitute permissible accessory uses of residential property. Appeal of Lord, 368 Pa. 121, 81 A.2d 533 (Sup. Ct. 1951), held that such a tower, 32 feet high, was an accessory use and that the local board of adjustment should not have denied the permit. In accord, see Village of St. Louis Park v. Casey, 218 Minn. 394, 16 N.W.2d 459, 155 A.L.R. 1128 (Sup. Ct. 1944), approving as an accessory use of a plot in a residential district erection of two radio poles, with revolving directional antennae, one of the poles being 60 feet high set in a concrete foundation 10 or 12 feet deep and supported by three guy wires anchored to iron posts, *385 two of which were situated at the front corners of the lot and the third toward the rear of the lot. However, a majority of the court in Presnell v. Leslie, 3 N.Y.2d 384, 165 N.Y.S.2d 488, 144 N.E.2d 381 (Ct. App. 1957), held that, on the record, petitioner had failed to establish that a proposed 44-foot rotary beam antenna tower was an accessory use customarily incidental to a highly classified residential area.
Despite these conflicting views, which point up the debatable character of the issue, we find our own Supreme Court's ruling in Wright v. Vogt controlling and determine that the erection of such a radio tower in a residential zone for use by an amateur as a hobby is a permissible accessory use.
Defendants maintain that Wright v. Vogt is distinguishable on its facts from the present case because the zoning ordinance in that case made no reference to the erection of radio towers anywhere in the municipality, whereas the zoning ordinance in this case permits radio towers and antennas not to exceed 100 feet in height in Highway Business Zone B-2, Shopping Center Business Zone B-3 and Restricted Industrial Zone IR. They contend that this local legislation discloses an intent that radio towers should be permitted in the municipality only in the specific zones designated and to the height limited, thus eliminating them entirely from residential districts. They also point to the fact that section 602 (3), which section deals with permitted uses in a residential zone, provides:
"Accessory uses on the same lot and customarily incidental to the permitted dwelling unit shall not include a business but may include:
(a) Private Garage
(b) Swimming Pool
(c) Tool House."
From this language they conclude that the local legislative intent was not to consider radio towers as an accessory use in a residential zone.
*386 The express provision in Cherry Hill's 1960 zoning ordinances permitting radio towers and antennas in specified business zones and in an industrial zone where, presumably, they may be utilized for business purposes, does not clearly evidence an intent by the municipality to preclude their erection in a residential zone as an accessory use for a nonbusiness purpose, such as an amateur's pursuit of his hobby as a radio enthusiast. In legal contemplation, the officials of Cherry Hill knew, when they adopted the zoning ordinances of 1960, of the Supreme Court's decision in Wright v. Vogt and could have expressly prohibited such radio towers as an accessory use or, at least, could have reasonably limited their height as an accessory use in a residential zone, where they have limited the height of the residential buildings to 35 feet. Instead, they failed to do so. By incorporating language in the 1960 zoning ordinance substantially identical to that previously construed nine years earlier in Wright v. Vogt, it is reasonable to conclude that the municipality intended such radio towers to be a permissible accessory use of residential property, in the absence of any clear expression to the contrary.
The 1960 Cherry Hill ordinance made it clear that an accessory use in a residential zone may include a private garage, a swimming pool and a tool house, but we do not regard the express inclusion of those three items as an intended exclusion of all other accessory uses. No contention is made that plaintiff's contemplated use of this radio tower is for any business purposes. Other than the pleasure derived by him from this hobby, plaintiff, as a member of the Radio Amateur Civil Emergency Service, a voluntary service established by the Federal Government, would use this tower and his radio equipment as a prime communications channel for civil defense. He is also, incidentally, a Deputy Civil Defense Director of Cherry Hill.
The second question to be resolved is whether height limitations set forth in the ordinance limiting "buildings" in this R-2 residence zone to a maximum height of 35 feet, *387 and certain specified exceptions to the height limitations, have applicability here. Thus, section 510 of the ordinance lists as exceptions to the height limitations "Church spires, belfries, cupolas, penthouses and domes not used for human occupancy; * * * chimneys, ventilators, skylights, water tanks, bulkheads, similar features and necessary mechanical appurtenances usually carried above roof level." As to these, section 510 also provides:
"* * * Such features, however, shall be erected only to such height as is necessary to accomplish the purpose they are to serve and must be specifically approved by the Zoning Board of Adjustment."
In interpreting section 510, the Law Division decided that "it was certainly the intent of the governing body that there were mechanical appurtenances that necessarily must be erected, and that would be erected to heights above roof level"; and that this section "has reference to those contrivances that may be attached to the roof," such as television antennas. It made no express finding that section 510 did or did not apply to such contrivances when not attached to the roof, as in the instant case.
Defendants argue that the trial court incorrectly held that this radio tower fell within the height exceptions listed in section 510. That is not made explicit in the opinion, as noted above. They contend that "the correct interpretation of section 510 is that its terms apply only to roof top structures, not ground structures." In the alternative, they maintain that, if the Law Division properly held that plaintiff's requested use did fall within the height exceptions of the zoning ordinance, the matter should be remanded to the zoning board for a determination of the height required, the matter not having been passed upon at the local level.
In Wright v. Vogt, supra, a similar question was raised, the ordinance therein also limiting "buildings" in residence zones to a maximum height of 35 feet, "except that this specified height shall not apply to church steeples, chimneys, or flagpoles." Despite that much more limited language, *388 the Supreme Court held that "the words of exclusion in the exception have a generic rather than a specific connotation" (7 N.J., at p. 7); and the "exception is to be construed in relation to the permissible accessory uses" (Id., p. 8). It concluded that the 60-foot tower support for a radio antenna involved therein did not violate the height restrictions. Wright v. Vogt compels the same conclusion here, viz., the 35-foot height limitation for buildings in residence zones does not control this permissible accessory use, but the same comes within the height exceptions provided for by section 510.
We find defendants' contention, that the terms of section 510 "apply only to roof top structures," is not well taken. One of the specific exceptions noted therein is "bulkheads." Obviously, a bulkhead is not a roof top structure. A "flag-pole" would come within the exceptions, even if it were not placed on the roof top. In referring to "necessary mechanical appurtenances," as an exception to the height limitations, section 510 did not limit them to "roof top structures," but referred to them in broader language as those "usually carried above roof level." The tower in issue would be carried "above roof level." If it were intended to limit such appurtenances to those attached to the roof, more appropriate language demonstrative of such a legislative intent was available and should have been employed. Zoning regulations are restrictive of property rights and ought not to be too broadly interpreted against the possessor thereof. Appeal of Lord, supra, 81 A.2d, at p. 535.
Our holding that an amateur's radio tower is a permissible accessory use in a residence zone and, in this case, within the exceptions to the height limitation, provided for by section 510 of the ordinance, brings us to the third basic question as to whether the Law Division properly allowed such a tower and antenna to be erected having a total height of 100 feet.
Accessory uses are not without their limitations. "It is clear that, in the conduct of a hobby, the scale of its operation *389 may well carry it beyond what is customary or permissible. * * * So, a simple workshop may be expanded beyond all reasonable bounds." Presnell v. Leslie, supra, 165 N.Y.S.2d, at p. 491, 144 N.E.2d, at p. 383. Section 510 of the ordinance provides that features usually carried above roof level "shall be erected only to such height as is necessary to accomplish the purpose they are to serve and must be specifically approved by the Zoning Board of Adjustment." Such approval was not obtained here. The board did not decide whether the proposed height was necessary to accomplish the purpose to be served by this radio tower. It chose to dismiss the application on other grounds, noted above.
The Law Division decided that a total height of 100 feet for the tower and antenna was reasonably necessary if they would serve the intended purpose. The evidence in the record supports that conclusion. No useful purpose would be served by detailing it here. The municipality itself has fixed a standard of reasonableness as to such towers, in limiting their maximum height to 100 feet. Nor should this litigation be unduly prolonged by a remand to the local board of adjustment for such a finding, only to be followed by a new round of proceedings in the Law Division and here, if a finding adverse to plaintiff were arbitrarily made. See Roselle v. Wright, 21 N.J. 400 (1956).
Defendants claim additionally that the judgment under review is erroneous in that, in sanctioning the erection of the tower "in accordance with the Plot Plan and Detailed Parts Views submitted into evidence," it authorizes violation of the setback and side-line restrictions of the zoning ordinance. The approved plan provides for the placement of the tower in the rear of plaintiff's home in sufficient compliance with the setback and side-line requirements, but in securing the tower against toppling there would be three guy wires leading therefrom to anchors located beyond the prescribed setback lines. These anchors are described as 6.5" O.D. steel pipes sunk in concrete and rising five feet above *390 ground level. Defendants rely upon section 501 of the zoning ordinance and the Schedule in Article III thereof in support of their contention.
Section 501, so far as pertinent here, provides:
"No building shall hereafter be erected * * * nor shall any land be designed or used for any purpose other than those included among the uses listed as permitted uses * * * and meeting the requirements set forth by the Schedule appended hereto and constituting a part of Article III of this Ordinance. * * *." (Emphasis added)
In Appendix A of the ordinance, "building" is defined as follows:
"Any structure having a roof supported by columns, piers, or walls including tents, lunch wagons, trailers, dining cars, camp cars, or other structures on wheels, or having other supports and any unroofed platform, terrace or porch having a vertical face higher than three (3) feet above the level of the ground from which the height of the building is measured." (Emphasis added)
This broad definition of "building," including as it does "or other structures on wheels, or having other supports," is somewhat unclear as to whether these words refer to structures other than one "having a roof," such as the proposed radio tower and its supports, the three guy wires and their anchors. We are satisfied that, despite this lack of clarity in the definition of "building," the local legislative intent was to subject structures such as this to the setback provisions, thus limiting the use of the land for their erection to the restricted area. It seems clear that, if the municipality intended an unroofed platform, rising more than three feet above the level of the ground, to be subject to the setback provision, it intended to restrict in a similar manner a radio tower and antenna, rising 100 feet above the level of the ground.
The supports of a radio tower needed to resist high winds, even though consisting of wires and pipes sunk in concrete and rising five feet above ground level, are in the case of *391 this proposed structure an integral part thereof and an essential safety factor required by the municipal building code, in the case of radio towers over twelve feet in height. As such, they may not be located on plaintiff's premises in violation of the setback provisions of the zoning ordinance. The opinion of the Law Division did not deal expressly with this issue. It may not have been specifically pressed at the hearing. However, the trial court did say in its opinion and judgment that all other ordinances and regulations of the township must be complied with before the judgment is given effect. If there be any misunderstanding as to the meaning thereof, it is our judgment that the proposed tower and its supports, whether guy lines with anchors or otherwise, must conform with the setback provisions of the zoning ordinance and the municipal building code.
Our determination that a variance was not needed makes it unnecessary to decide whether the board of adjustment acted properly and for valid reasons in denying plaintiff's application, in the alternative, for a variance.
Plaintiff's further argument that the denial of a permit to him would constitute an unlawful invasion by the municipality into a field of regulation fully pre-empted by the Federal Government is without legal merit. See Presnell v. Leslie, 3 N.Y.2d 384, 165 N.Y.S.2d 488, 114 N.E.2d 381, 384-385 (Ct. App. 1957), where a similar contention was held to be not well taken for reasons which we regard as sound. True, radio broadcasting has been held to be interstate commerce and subject to regulation. National Broad-casting Co., Inc. v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943). Congress has enacted extensive legislation regulating this field. See Title 47, United States Code Annotated. The Federal Communications Commission has issued a series of regulations governing amateur radio operators. Code of Federal Regulations, Title 47, §§ 12.0-12.257. Among these regulations is subdivision (a) of section 12.60, which provides, so far as pertinent here, that no new antenna structure shall be erected for use by any station *392 in the amateur radio service without prior approval by the Commission in any case where "the antenna structure proposed to be erected will exceed an over-all height of 170 feet above ground level." It is obvious therefrom that if these regulations were exclusive, every amateur could build a 170-foot tower on his premises without even consulting the Federal Communications Commission. Such an interpretation would lead to an absurd result. Despite the federal regulation of radio communications, there arise problems dealing with amateur radio, often carried on in the amateur's home, which require for their proper solution thorough consideration of the particular area and surroundings. Regulation of these matters is properly left to local regulation without impairment of the national interest in the matter. A zoning regulation is such a matter of local concern. See Rhyne, Municipal Regulations, Taxation and Use of Radio and Television, Report No. 143, National Institute of Municipal Law Officers, p. 19 (1955); Socolow, Law of Radio Broadcasting, § 197, p. 206 (1939). See, too, Huron Portland Cement Co. v. City of Detroit, Michigan, 363 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960), holding that the ultimate inquiry is whether Congress intended to occupy the field exclusively and that "such intent is not to be implied unless the act of Congress, fairly interpreted, is in actual conflict with the law of the state." The grant of power to Congress by the commerce clause did not wholly withdraw from the states the authority to regulate interstate commerce with respect to matters of local concern, so long as the state action serves local ends and does not discriminate against interstate commerce. Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1942).
For the reasons stated above, the judgment of the Law Division is affirmed, subject to the understanding that plaintiff must comply with the setback provisions of the zoning ordinance and the local building code, as indicated above. No costs to either party.