231 N.J. Super. 239 (1989)
555 A.2d 657
ALPINE TOWER COMPANY, A JOINT VENTURE OF TELE-A-PAGE, INC. AND U.A. COLUMBIA TOWER COMPANY, PLAINTIFF-APPELLANT,
v.
MAYOR AND COUNCIL OF THE BOROUGH OF ALPINE, A MUNICIPAL CORPORATION; ZONING BOARD OF ADJUSTMENT OF THE BOROUGH OF ALPINE; ROBERT WILSON, CONSTRUCTION CODE OFFICIAL OF THE BOROUGH OF ALPINE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 23, 1988.
Decided February 23, 1989.
*241 Before Judges KING, BRODY and SKILLMAN.
Hannoch Weisman, attorneys for appellant (Todd M. Sahner and James J. Scott, on the brief).
DeCotiis & Pinto, attorneys for respondent Zoning Board of Adjustment of the Borough of Alpine (John J. Langan, Jr., on the brief).
Logan and Logan, attorneys for respondents Mayor and Council of the Borough of Alpine and Robert Wilson, Construction Code Official of the Borough of Alpine (James P. Logan, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Plaintiff Alpine Tower Company is the owner of a regional communications facility constructed on a 15 acre site in the Borough of Alpine. The site is located 550 feet above sea level on top of the Palisades near New York City. Thus, it is especially suitable for communications purposes.
In the late 1930's, Major Edwin Howard Armstrong, a pioneer of FM radio, built a 400-foot transmission tower on the *242 site. In addition to the transmission tower, the site contains a 100-foot tower with an out-of-service radar antennae, three buildings, three huts and three trailers. The trailers contain a variety of electronic equipment required to operate the communications facility. Also, the Hackensack Water Company owns and operates an elevated water tank located in the northern corner of the property.
The users of plaintiff's communications facility include a cable television company which services many municipalities in the New York-New Jersey metropolitan area, an independent satellite distributor of cable television programming, Fairleigh Dickinson's FM radio station, a Federal Bureau of Investigation mobile communications facility, a United States Department of Justice international customs control communications facility and several large companies which provide paging services to, among others, doctors, ambulances and fire security companies.
Insofar as the record indicates, all improvements on plaintiff's site were constructed prior to the property being zoned. However, the property is presently zoned residential. Thus, plaintiff's communications facility is a nonconforming use.
This case involves plaintiff's efforts to obtain the required municipal land use approvals to replace the trailers on the site with a building capable of housing the electronic equipment now in the trailers.[1] In October 1982, plaintiff submitted an application to the Alpine Borough Board of Adjustment (the Board) for a variance and site plan approval to permit the construction of a single-story 4,900 square foot building directly beneath the 400-foot transmission tower. In support of its application, plaintiff presented evidence that the trailers, some of which date back to the 1940's, are ill-suited for modern electronic equipment, because the new, highly sophisticated *243 technology that plaintiff seeks to install requires a constant temperature of 70 degrees and a dust-free environment. Plaintiff also presented evidence that a permanent building to replace the trailers would provide greater security for the equipment and improve the appearance of the property.
Following four hearings held from December 7, 1982 to March 31, 1983, the Board voted unanimously to approve the application and subsequently adopted a resolution of approval. The Board made the following pertinent findings of fact and conclusions of law:
6. The Alpine Tower site has been used for a number of years as a communication[s] site and the use of the new facility to house electronic equipment is consistent with the past use of the site.
7. The [Board] further finds that based upon the data available to the scientific community a[t] this time, the RF radiation found at the Alpine Tower site does not present a health hazard to the people of Alpine presently.
8. Approval of [a] use variance will not create a substantial detriment to the public good or substantially impair the intent and purpose of the zoning plan of the Borough of Alpine; furthermore, there will be no change in the basic operation of the site together with uniqueness of the location of site for its intended purpose, there are special reasons for granting the use variance requested herein.
Plaintiff subsequently determined that the 4,900 square foot building authorized by the 1983 resolution had insufficient capacity to house all the electronic equipment of users of the facility. Consequently, plaintiff submitted a second application in April 1985 for "site plan approval" for a single-story 6,900 square foot building. Following a hearing on May 7, 1985, the Board voted 3-2, with one abstention, to approve the application. Following the vote, the Board's attorney ruled that the application had not passed because plaintiff actually sought a use variance requiring five affirmative votes. A resolution of denial was approved at the following meeting. The Board's 1985 resolution first states:
1. A resolution was previously passed by this Board on April 6, 1983 granting a D variance from Borough Ordinance # 17-3.4(e) and a C variance from Borough Ordinance # 17-6, together with approval of a site plan prepared by Tellefsen & Mader dated March 11, 1981 last revised February 28, 1983. This *244 Board herein adopts and incorporates all the findings of facts and conclusions of law set forth in said resolution.
However, the resolution then goes on to state:
2. Applicant seeks to increase the square footage from 4984 square feet to 6,912 square feet of the structure set forth in A-6 and A-7. Said increase in square footage is found to be an expansion of a non conforming use, thereby necessitating five affirmative votes for approval.
3. Alpine Tower has failed to demonstrate the requisite hardship necessary to sustain [its] application for increasing a non conforming use, furthermore, to grant an expansion of this non conforming use would be a detriment to the master plan of the Borough of Alpine.
Plaintiff filed an action in lieu of prerogative writ challenging the denial of its application for authorization to construct the 6,900 square foot building.[2] One count of plaintiff's complaint alleged that the Board erroneously construed its vote of approval as a denial. Another count contended that, assuming plaintiff needed five affirmative votes for approval, the Board acted arbitrarily and capriciously in denying the requested relief.[3]
The trial court rejected plaintiff's claims and entered final judgment dismissing the complaint.[4] In rejecting plaintiff's *245 claim that its site plan application could be approved without a new use variance and that the Board's simple majority vote in favor of the proposal was sufficient, the trial court ruled that the Board's 1983 resolution granting a use variance only authorized plaintiff's proposal to erect a 4,900 square foot building. The court reasoned that a contrary holding would permit plaintiff to rely upon the 1983 variance as authority to erect structures on the entirety of its 600,000 square foot tract, limited only by the municipality's bulk zoning requirements. Consequently, the court concluded that plaintiff's plan to construct a 6,900 square foot building constituted a new application to expand a nonconforming use which required a new use variance.
In rejecting plaintiff's claim that the denial of its application was arbitrary and capricious, the trial court indicated that it had difficulty perceiving any reasonable basis for the denial. However, the court further indicated that because the Board's two dissenting members failed to make express findings of fact and conclusions of law supporting their negative votes, it could not conclude that the Board's decision was arbitrary and capricious:
I don't know what the problem is here. I really don't know why people are voting the way that they're voting.... [I]t is difficult for me to understand in the vacuum as I see it or clos[e] to vacuum as I see it, what the basis of two negative votes were in this application which allowed for ... an expansion of two or three feet in the exterior perimeter of the building.... There is no question that the expansion of that building, as I see it on the record before me, would not increase traffic. There is no question in my mind that the expansion of the building as I see it on the paper would not have an adverse impact on the surrounding property owners because of the fact as the plan is here, it would not change any of the screening, the wooded areas, the green acres, existing *246 wooded areas or anything else like that that are on the property. It does not appear that it creates aesthetic problems.... It is not an increase in height which is going to increase the exposure from surrounding properties or anything along those ways.
So for that purpose I just have difficulty understanding why they did it and since they haven't told us why they did what they did, I find difficulty in coming to a conclusion that what they did was arbitrary and unreasonable.
* * * * * * * *
The burden is on the applicant to put the proofs in but I can't tell in this case, for example, whether or not the no votes were on the basis that they didn't like the color of the hair of the applicant or they didn't like the attorney that was appearing.
We agree with the trial court's conclusion that plaintiff's application for approval to erect a 6,900 square foot building required a new use variance and, therefore, that five affirmative votes were required for approval. However, we conclude, contrary to the trial court, that plaintiff established that the denial of its application was arbitrary and capricious.

I
N.J.S.A. 40:55D-70(d) provides that a use variance "shall be granted only by [an] affirmative vote of at least five members" of a board of adjustment. Plaintiff only received three affirmative votes in favor of its proposal to construct a 6,900 square foot building on its property. Therefore, if a use variance was required, plaintiff failed to obtain the necessary votes for approval. However, plaintiff argues that the use variance granted by the Board in 1983 provided the required authorization for the construction of the 6,900 square foot building.
We agree with the trial court that this argument is without merit. Plaintiff's application for a variance and site plan approval filed in October 1982 sought approval for construction of a 4,900 square foot building at a specified location and with specified dimensions. Therefore, the Board's 1983 resolution implicitly limited plaintiff's use variance to the building shown on its application.
*247 Indeed, the kind of variance plaintiff claims to have received in 1983, permitting "the Alpine Tower facility to exist as a commercial use in a residential zone," would be beyond the authority of a board of adjustment to grant. A board's power under N.J.S.A. 40:55D-70(d) to grant a use variance "in particular cases and for special reasons" is limited to the authorization of specific nonconforming uses in specified structures. As the court observed in Frankel v. C. Burwell, Inc., 94 N.J. Super. 53, 59 (Law Div. 1967), "[i]t would seem to be fundamental that a building erected pursuant to a variance must be substantially the building for which a variance was granted." Therefore, a board cannot grant an open-ended authorization to an owner of a commercial facility in a residential zone to construct any facilities it desires. Such a variance would constitute a rezoning of the property, which is a power possessed exclusively by the governing body. Thus, the Board's approval of a use variance for a 4,900 square foot building did not provide the requisite authorization for construction of a 6,900 square foot building.
This conclusion is consistent with this court's decision in Industrial Lessors, Inc. v. Garfield, 119 N.J. Super. 181 (App. Div. 1972), certif. den. 61 N.J. 160 (1972), the case primarily relied upon by plaintiff, which considered the right of a property owner to reconstruct a building destroyed by fire which had been constructed pursuant to a use variance. The court stated that the property owner had a "clearly implied statutory right to rebuild its structure if essentially duplicative in all respects of that previously in existence pursuant to the variance." Id. 119 N.J. Super. at 183 (emphasis supplied). Here, the proposed 6,900 square foot building is not essentially the same as the 4,900 square foot building previously approved.

II
A use variance is required in order to expand a nonconforming use. N.J.S.A. 40:55D-70d(2). An applicant for a use *248 variance must show "(1) that `special reasons' exist for the variance, and (2) that the variance `can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and the zoning ordinance.'" Cerdel Constr. Co., Inc. v. East Hanover Tp., 86 N.J. 303, 307 (1981), quoting N.J.S.A. 40:55D-70d. However, applications for limited expansions of existing nonconforming uses are viewed with greater liberality than applications for variances to allow new uses, because they are "less likely to involve substantial impairment of the zoning plan than ... creation of a wholly new use...." Grundlehner v. Dangler, 29 N.J. 256, 269 (1959); see also Belleville v. Parrillo's, Inc., 83 N.J. 309, 316-317 (1980). Moreover, "beautifying an area" and "promoting safety" have been recognized as "special reasons" for expanding a nonconforming use. Kessler v. Bowker, 174 N.J. Super. 478, 486-487 (App.Div. 1979), certif. den. 85 N.J. 99 (1980); see also Kramer v. Sea Girt Bd. of Adjustment, 45 N.J. 268, 291-293 (1965).
A board of adjustment must state findings of fact and conclusions of law to support its decision to deny a variance application. N.J.S.A. 40:55D-10g; see also Harrington Glen, Inc. v. Leonia Bd. of Adjustment, 52 N.J. 22, 28 (1968). Where the votes of a minority of a board are controlling due to a statutory requirement that more than a majority vote in favor of an application, the minority must make appropriate findings of fact and conclusions of law. N.J.S.A. 40:55D-10g(2).
Although the Board's 1985 resolution apparently constituted an attempt to satisfy this requirement, it does not contain any factual findings to support a denial of plaintiff's application. To the contrary, it incorporates and adopts by reference the findings made by the Board in approving plaintiff's application in 1983, without setting forth any findings to support a denial of the 1985 application. Moreover, our review of the record satisfies us that the deficiencies in the Board's 1985 resolution are not simply the result of the two dissenting members' failure *249 to fully express the reasons for their votes. Rather, the deficiencies reflect the absence of any reasonable basis for a denial of plaintiff's application.
The record provides unequivocal support for the Board's 1983 finding that the erection of the proposed new building to replace the trailers will not result in any "change in the basic operation of the site." The proposed new building will not change the character of the existing use or increase its magnitude to any significant degree. It simply will replace the trailers which currently house the electronic equipment on the site with a modern building serving that same purpose. The new building will be erected at approximately the same location as the trailers. Moreover, the same number of employees will continue to be employed on the site. And while the total area of the new building will be somewhat larger than the trailers, this increase in size will simply alleviate the overcrowding of the existing facility.
The new building will be more aesthetically pleasing, more secure and safer than the trailers. Such improvements in the facilities on the site constitute "special reasons" for allowing the proposed minor expansion of plaintiff's nonconforming use. Kessler v. Bowker, supra, 174 N.J. Super. at 486-487; Kramer v. Sea Girt Bd. of Adjustment, supra; cf. Moore v. Bridgewater Tp., 69 N.J. Super. 1, 23-24 (App.Div. 1961) (installation of new equipment modernizing quarrying facility held to be valid as continuation of nonconforming use). The regional public benefit derived from plaintiff's communications facility and the need for the proposed new building to house the sensitive modern electronic equipment used in the facility provide additional grounds for a finding of "special reasons." Yahnel v. Jamesburg Bd. of Adjustment, 79 N.J. Super. 509, 517-519 (App.Div. 1963), certif. den. 41 N.J. 116 (1963); see also Medici v. BPR Co., 107 N.J. 1, 9-18 (1987).
The record also provides unequivocal support for the Board's 1983 finding that "[a]pproval of [a] use variance will not create *250 a substantial detriment to the public good or substantially impair the intent and purpose of the zoning plan of the Borough of Alpine." Plaintiff's site is 15 acres in size. The proposed new building will be in the middle of the site at the same location as the existing improvements. The improvements will cover less than 2% of the total site even after construction of the proposed new building. Furthermore, the improvements are well buffered by vegetation. Therefore, this communications facility is not incompatible with surrounding land uses. In any event, the building will not in any way change the existing, legally established nonconforming use. Indeed, the only effect of the new structure will to improve the appearance of the site through the removal of the trailers.
The Board's 1985 resolution denying plaintiff's application states that "Alpine Tower has failed to demonstrate the requisite hardship necessary to sustain his [sic] application for increasing a nonconforming use." However, a showing of hardship is not required to obtain a use variance. Medici v. BPR Co., supra, 107 N.J. at 17 n. 9; Yahnel v. Jamesburg Bd. of Adjustment, supra, 79 N.J. Super. at 509. Rather, the only affirmative statutory requirement is a demonstration of "special reasons." In any event, the undisputed evidence indicates that plaintiff would incur hardship if it is forced to continue housing sophisticated electronic gear in the trailers presently on the site.
In short, the proofs demonstrate that plaintiff's property is uniquely suited for its current use and that modernizing that use will not be detrimental to the public good. To the contrary, the proposed new building will be more aesthetically pleasing, safer, and better serve the vital regional communications facilities on the site than the existing trailers. Thus, the votes of dissenting members of the Board, which resulted in the denial of plaintiff's application, were arbitrary and capricious.
Accordingly, we reverse the judgment of the trial court and remand the matter to the Board to set reasonable conditions *251 comparable to those it imposed in granting plaintiff's 1982 use variance application.
NOTES
[1] Although plaintiff presented testimony of Thomas Moore, a planning consultant, at the initial hearing before the Board, that the residential zoning of its property was inappropriate, plaintiff did not pursue this claim in its prerogative writ action.
[2] Prior to filing a prerogative writ action, plaintiff appealed the denial of its application to the governing body of the Borough of Alpine. After extended hearings in which there was substantial argument regarding the safety of facilities transmitting microwaves and radio waves, the governing body voted to affirm the action of the Board of Adjustment. However, the governing body's attorney then advised them that they had no jurisdiction over the matter, because their authority is limited to review of the approval of use variances, see N.J.S.A. 40:55D-17a, and in this case the Board had denied plaintiff's application. Consequently, the governing body never adopted a resolution. All parties agree that the Board's denial of plaintiff's application represents the final municipal action with respect to this matter.
[3] The complaint also contained additional counts which are not implicated on this appeal.
[4] The complaint named as defendants not only the Board but also the Mayor and Council of the Borough of Alpine and its construction code official. The answer filed by the Mayor and Council and construction code official included a counterclaim. Counts I, III and IV of the counterclaim alleged that plaintiff illegally expanded its nonconforming use and sought an order requiring removal of all equipment, buildings and facilities which were not protected by plaintiff's nonconforming status. Count II alleged that microwave transmission from plaintiff's property constituted a health threat to borough residents. Partial summary judgment dismissing count II of the counterclaim without prejudice was granted on October 27, 1986. Following the trial court's decision on plaintiff's complaint, the governing body and construction code official also dismissed counts I, III and IV of their counterclaim without prejudice.