270 N.J. Super. 122 (1993)
636 A.2d 588
NEW BRUNSWICK CELLULAR TELEPHONE CO., A PARTNERSHIP OF THE STATE OF DELAWARE T/A CELLULAR-ONE, PLAINTIFF,
v.
OLD BRIDGE TOWNSHIP PLANNING BOARD AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF OLD BRIDGE AND THE TOWNSHIP OF OLD BRIDGE, A MUNICIPAL CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
Decided September 30, 1993.
*126 Gregory J. Czura for plaintiff.
Thomas P. Norman, for defendant Old Bridge Township Planning Board (Norman and Kingsbury, attorneys).
James P. Hurley, for defendants Township of Old Bridge and Township Council (Himelman, Hurley & Himelman, attorneys).
WOLFSON, J.S.C.

I. FACTUAL BACKGROUND

New Brunswick Cellular Telephone Company (Cellular One), appeals from a decision of the Old Bridge Township Planning Board denying its application for a height variance and site plan approval to develop and operate a base station and a 160-foot antenna tower (a permitted use) on a 3.74 acre parcel located in the OG-1 zoning district.[1] The maximum height permitted is thirty feet.
A public hearing on this application was held before the Planning Board on February 2, 1993.[2] In addition to hearing from the *127 applicant's planning expert, who opined that the proposed radio transmission tower was an accessory structure  a conclusion ultimately embraced by the Planning Board  testimony was also elicited in support of the applicant's contention that the proposed tower would provide regional and community benefits to motorists and governmental entities (such as the emergency 911 service), as well as police and fire personnel. Proof that the existing cell sites were inadequate, resulting in interrupted and dropped phone calls in this portion of the Route 9 corridor, was also introduced.
The undisputed evidence also established that: (1) the height of the antenna was integrally related to the effectiveness of the cellular coverage; (2) these signals would not interfere with normal telephone, radio, or television service or reception in the area; and (3) the maximum signal output from this station would be approximately 2700 times below that permitted by the New Jersey State Code.
A resolution memorializing the Board's decision denying the application was adopted on March 2, 1993. Although the Board acknowledged having jurisdiction since it deemed the tower to be an "accessory" rather than a "principal" structure, it concluded that the 160 foot tower would cause a detrimental impact to the area, the Zone Plan and the Master Plan.[3] This appeal followed.

*128 II. THE CLAIMED EXEMPTION FROM THE HEIGHT ORDINANCE

Initially the applicant contends that no height variance is required for its tower, relying on Paragraph 7(F)3 of the Old Bridge Code, which provides in part: "In all districts except the O-G zone, television and radio antennas may extend above the height limit by not more than twenty-five feet...." (emphasis added). Plaintiff argues that this language specifically exempts television and radio antennas that are located in the OG zone from the height limitations. The Board, predictably, relies on the plain language of the ordinance to support its contention that the thirty-foot height limitation applies.
The question of whether the height restrictions apply to the proposed use is one of law which must be resolved by this court (Pagano v. Zoning Bd. of Adjustment of Twp. of Edison, 257 N.J. Super. 382, 396, 608 A.2d 469 (Law Div. 1992); Jantausch v. Borough of Verona, 41 N.J. Super. 89, 96, 124 A.2d 14 (Law Div. 1956), aff'd, 24 N.J. 326, 131 A.2d 881 (1957)) the interpretation of an ordinance being a subject essentially within the province of the courts. Grancagnola v. Planning Bd. of Twp. of Verona, 221 N.J. Super. 71, 75-76, 533 A.2d 982 (App.Div. 1987). Consequently, the court is bound neither by the testimony of an expert, who opines on the legislative intent, nor by the ultimate interpretation embraced by the Board. The standard of review is clearly de novo. Pagano, supra, 257 N.J. Super. at 397, 608 A.2d 469; Grancagnola, supra, 221 N.J. Super. at 75-76 n. 5, 533 A.2d 982.
Although the court is not restricted to the four corners of the zoning ordinance or the master plan in seeking to glean the legislative intent, Pagano, supra, 257 N.J. Super. at 396-97, 608 A.2d 469, no additional evidence (other than an earlier version of the ordinance) was presented from which that intent might have been more readily ascertained.
*129 Nonetheless, to determine the legislative intent, this court has reviewed and has considered that:
1. Height restrictions do not apply to: church spires, belfries, cupolas, penthouse, chimneys, ventilators, skylights, water tanks, bulkheads, similar features, and necessary mechanical appurtenances usually carried on above the roof level.
2. Radio and telecommunications antennas are permitted uses within the OG zone.
3. A height restriction of thirty feet is generally applicable in the OG zone.
4. There is an increased height exception available to antennas in zones other than the OG zone.
5. The master plan is silent.
Inasmuch as the ordinance expressly exempts a far bulkier and more visible water tower from the thirty-foot height limit, logic would certainly suggest that a like exception should exist for telephone communication towers, especially since both are routinely required to be higher than thirty feet to be functional. Ironically, if the Board's interpretation were correct, where communications facilities and equipment are specifically permitted, they are limited to a height of thirty feet, but where they are prohibited they may be an additional 25 feet higher.
Without specifically deciding the issue,[4] the interpretation urged by the Board renders the ordinance vulnerable to constitutional attack under both the substantive Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution in that: (1) the ordinance distinctions fail to substantially advance any legitimate governmental objectives (see, e.g., Katobimar Realty Co. v. Webster, 20 N.J. 114, 118 A.2d 824 (1955); and see, Nollan v. California Coastal Commission, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987)) and (2) the ordinance distinguishes between structures such as water towers and radio *130 antenna towers without any apparent rationale therefor (See, e.g., Exxon Co., U.S.A. v. Livingston Twp. in Essex County, 199 N.J. Super. 470, 477, 489 A.2d 1218 (App.Div. 1985)).
Although courts may engage in "judicial surgery"[5] to avoid an unconstitutional construction and may supply or delete ordinance language where to do so may reasonably be implied, the court cannot conclude in this context that the governing body would advocate such an "operation".[6]Compare, Princeton Cablevision, Inc. v. Union Valley Corp., 195 N.J. Super. 257, 270, 478 A.2d 1234 (Ch.Div. 1983). (If "necessary to engage in `judicial surgery' to save an ailing enactment, and if it appears that the legislature would have wanted the statute to survive, it is the court's duty to operate.")
Despite its apparent flaws I am satisfied that the Old Bridge governing body would not advocate the extensive "surgery" probably needed to correct the deficiencies in this ordinance. Nonetheless, the applicant's claimed exemption from the height restrictions does not accurately reflect the legislative intent as articulated in the existing ordinance. It is therefore rejected.

III. THE JURISDICTIONAL ISSUE: WHETHER THE PROPOSED TOWER IS A PRINCIPAL STRUCTURE OR AN ACCESSORY USE

Distilled to its most basic terms, resolution of this novel jurisdictional issue is dependent upon whether the application in *131 this case necessitated relief from the Board of Adjustment by virtue of N.J.S.A. 40:55D-70(d)(6) (height of a "principal structure" exceeds ordinance limit by ten feet or 10%) or, instead, from the Planning Board pursuant to its ancillary authority to grant bulk or other non-"d" variances in conjunction with its delegated power to review site plans. See, N.J.S.A. 40:55D-60; see also, North Bergen Action Group v. North Bergen Twp. Planning Bd., 122 N.J. 567, 571, 585 A.2d 939 (1991). Although the Board here concluded that an accessory use rather than a principal structure was involved, this too, is a legal question which must be adjudicated without deference to that determination. Pagano, supra, 257 N.J. Super. at 396, 608 A.2d 469; Jantausch, supra, 41 N.J. Super. at 96, 124 A.2d 14.
Under the local Ordinance[7], a "principal building" is defined as: "A building on a lot in which the principal use of that lot is conducted." The Land Development Ordinance of the Township of Old Bridge, Art. II, Sec. 2-2, effective August 9, 1992. Accessory uses, buildings or structures include: "A use, building or structure subordinate to the principal use of the building or structure on the same lot and serving a purpose customarily incidental to the use of the principal building or structure." Id.
The Township argues[8] that the proposed use involves a principal structure which exceeds by ten feet or 10% the maximum height permitted in the district thereby invoking the exclusive jurisdiction of the Zoning Board of Adjustment. See, N.J.S.A. 40:55D-70(d)(6); see also, N.J.S.A. 40:55D-20 (any power expressly authorized to be exercised by the Planning or Zoning Board *132 shall not be exercised by any other body). Since there has been no "arrogation of authority" rising to the level of a "wholesale invasion of a governing body's paramount legislative powers over the zoning scheme of a municipality," the Township plainly lacks standing to raise this issue. See, Washington Twp. Zoning Bd. of Adjustment v. Washington Twp. Planning Bd., 217 N.J. Super. 215, 223, 525 A.2d 331 (App.Div. 1987); see also, Dover Twp. v. Bd. of Adjustment of Dover Twp., 158 N.J. Super. 401, 409, 386 A.2d 421 (App.Div. 1978). Nevertheless, the court will address it sua sponte.
In L.I.M.A. Partners v. Borough of Northvale, 219 N.J. Super. 512, 530 A.2d 839 (App.Div. 1987) (hereafter L.I.M.A.), the plaintiffs, affiliated companies involved in satellite communications, sought to erect a satellite dish, which was not permitted under the zoning scheme. The court there noted that the dishes were large, conspicuous structures that were integral to the primary use of the property, and therefore, were not accessory, but rather constituted the "main use" of the property. Id. at 519 (emphasis added). However, the court was not compelled to, nor did it decide that the dish was a "principal structure."
The distinction thus drawn between a principal structure on the one hand, and a primary or "main" use on the other, is both legislatively warranted and crucially important. The M.L.U.L. expressly limits the jurisdictional reach of the Board of Adjustment to those instances specifically enumerated in N.J.S.A. 40:55D-70(d)(1)-(6). That enabling legislation vests the Board of Adjustment with exclusive jurisdiction to grant variances where the use or principal structure is prohibited (d(1)) or where the height of a principal structure (but not the use) is ten feet or 10% greater than permitted (d(6)). Where, as here, the use is permitted, unless the cellular tower antenna is the "principal structure" on the property, the Planning Board, rather than the Zoning Board of Adjustment, would be exclusively empowered to review and adjudicate the site plan and variance application. See N.J.S.A. 40:55D-70 ("If an application for development requests *133 one or more variances but not a variance for a purpose enumerated in subsection d. of this section, the decision on the requested variance or variances shall be rendered under subsection c. of this section."); N.J.S.A. 40:55D-60; see also, Commercial Realty and Resources Corp. v. First Atlantic Properties Co., 122 N.J. 546, 564, 585 A.2d 928 (1991) (hereafter Commercial Realty) ("[W]here a structure violates a dimensional restriction of a zoning ordinance but the underlying use is permitted, the required variance is dimensional, under subsection c, and not a use variance involving a prohibited structure."); and see, North Bergen Action Group, supra, 122 N.J. at 571, 585 A.2d 939 (1991).
Assuming arguendo that L.I.M.A., supra, dictates that a cellular antenna (as compared to a satellite dish) is not an accessory use, such a conclusion is not tantamount to a determination that it is a principal structure. To the contrary, the New Jersey Supreme Court has held that a structure containing a permitted use that deviates only from setback or height restrictions in the zoning ordinance does not constitute a principal structure. Commercial Realty, supra, 122 N.J. at 564, 585 A.2d 928.
In Commercial Realty, the court noted that the phrase "principal structure" has been virtually ignored in published opinions since it was first introduced in the 1928 zoning act. While not articulating a definitive interpretation of this statutory phrase, it inferred that it was intended to apply to zoning ordinances that restrict specific types of structures, such as churches or billboards, irrespective of their underlying uses. Id.
In this case Cellular One's tower is subordinate to the main building (a warehouse and shopping center), and is customarily incidental to one of the uses in the principal building, specifically, the permitted radio communications equipment room, the nerve center of this facility. While perhaps integral to the main use of the property, (see, L.I.M.A., supra, 219 N.J. Super. at 519, 530 A.2d 839), consistent with the Commercial Realty and North *134 Bergen cases, supra, the tower is not the principal structure on the property.[9]
Since the proposed tower is not the principal structure on the property, and since no other variances were sought for any of the purposes enumerated in Sections d(1) through d(6) of N.J.S.A. 40:55D-70, jurisdiction was properly (and exclusively) vested with the Planning Board. See, N.J.S.A. 40:55D-60 (planning board exclusively authorized to grant "c" variances in conjunction with site plan review).

IV. THE MERITS OF THE VARIANCE APPLICATION

In reviewing a decision of the Planning Board, the court's power is tightly circumscribed. Recognizing that municipal officials have a peculiar knowledge of their communities and local conditions and are therefore the "best equipped to pass initially on such applications for variances," the courts have held that such decisions by the Board are cloaked with a presumption of validity. Ward v. Scott, 16 N.J. 16, 23, 105 A.2d 851 (1954); see also, Pagano, supra, 257 N.J. Super. at 388, 608 A.2d 469. So long as there is substantial evidence to support it, the court may not interfere with or overturn the decision of a municipal board. Even when doubt is entertained as to the wisdom of the Board's action, there can be no judicial declaration of invalidity absent a clear abuse of discretion by the Board. Consequently, zoning decisions may only be set aside if the court determines the decision was arbitrary, capricious or unreasonable. Pagano, supra, 257 N.J. Super. at 389, 608 A.2d 469; Medici v. BPR Co., 107 N.J. 1, 15, 526 A.2d 109 (1987).
Under N.J.S.A. 40:55D-70(c), a bulk variance may be granted (1) for hardship reasons or (2) where the grant of the approval will benefit the community in that it represents a better *135 zoning alternative for the property (referred to as a "flexible c"). The focus of the flexible c cases is on the characteristics of the land which present an opportunity for improved zoning and planning that will benefit the community. See, Kaufmann v. Planning Bd. for Warren Twp., 110 N.J. 551, 563, 542 A.2d 457 (1988) (grant of c(2) variance must be rooted in purposes of zoning and planning itself and must advance the purposes of the MLUL); see also, Valenti v. Planning Bd. of City of Absecon, 244 N.J. Super. 77, 83-85, 581 A.2d 878 (App.Div. 1990) (quantum of dimensional variances not dispositive; rather variances must be considered in context and in terms of their functional and aesthetic impact on surrounding area). Where an applicant demonstrates with regard to a specific piece of property that the purposes of the M.L.U.L. would be advanced by a deviation from the zoning ordinance requirements, and where the benefits of the deviation substantially outweigh any detriment, the variance must be granted.[10]Compare, Loscalzo v. Pini, 228 N.J. Super. 291, 302-04, 549 A.2d 859 (App.Div. 1988), certif. denied, 118 N.J. 216, 570 A.2d 972 (1989) (proofs demonstrated that variance granted was personal to owner).
It is thus immediately apparent that the Board's decision in this case was plainly deficient in that it: (1) failed to apply the proper standard of review; (2) imposed on the applicant an unlawful burden[11]; (3) neglected to engage in the proper balancing test required by law[12]; (4) was preempted from considering electromagnetic radiation or other radio frequency emissions in its assessment of the negative criteria (see, Section VI, infra; and L.I.M.A., supra, 219 N.J. Super. at 525, 530 A.2d 839); and (5) failed to articulate a sufficient factual basis for its conclusions, *136 couching its findings in the conclusory language of the statute (Medici, supra, 107 N.J. at 25, 526 A.2d 109; Harrington Glen, Inc. v. Municipal Bd. of Adjustment of Borough of Leonia, 52 N.J. 22, 28, 243 A.2d 233 (1968)). Accordingly, the Board's resolution of March 2, 1993, must be vacated and the matter remanded for further proceedings.

V. THE STANDARD TO BE APPLIED ON REMAND

Another issue not yet addressed in any reported opinion is whether a c variance which proposes an inherently beneficial use is entitled to the same type of "protective" scrutiny normally afforded to inherently beneficial uses in d variance cases.[13]Compare, Sica v. Bd. of Adjustment of Twp. of Wall, 127 N.J. 152, 164-67, 603 A.2d 30 (1992) (applicant relieved from enhanced burden of proof normally required for non-inherently beneficial use variances and board must attempt to reduce any claimed detriment by imposition of reasonable conditions imposed pursuant to N.J.S.A. 40:55D-22(b)); with, Medici, supra, 107 N.J. at 21, 526 A.2d 109 (enhanced burden of proof required to reconcile commercial d variance request with legislative omission of proposed use from zone).
Although inherently beneficial uses are generally institutional rather than commercial, a number of profit making ventures have been deemed to be inherently beneficial. Examples of such uses include a private head-trauma facility, Sica, supra, 127 N.J. at 159, 603 A.2d 30 (1992); a private, for-profit senior citizen congregate care facility, Jayber, Inc. v. Municipal Council of Twp. of West Orange, 238 N.J. Super. 165, 174-75, 569 A.2d 304 (App.Div. 1990); a radio transmission tower, Alpine Tower Co. v. *137 Mayor and Council of Borough of Alpine, 231 N.J. Super. 239, 249, 555 A.2d 657 (App.Div. 1989); and a telephone switching station, Yahnel v. Bd. of Adjustment of Jamesburg, 79 N.J. Super. 509, 519, 192 A.2d 177 (App.Div.), certif. den., 41 N.J. 116, 195 A.2d 15 (1963).
I consider especially significant the Supreme Court's approving references to the Yahnel and Alpine cases as examples of commercial uses that so advance the general welfare that they have properly been deemed inherently beneficial. Sica, supra, 127 N.J. at 165, 603 A.2d 30. As early as 1963 the Appellate Division noted that "improved telephonic communications are obviously a subject matter of high relationship to the welfare of the entire community." Yahnel, supra, 79 N.J. Super. at 518, 192 A.2d 177. Decades later, the courts have continued to acknowledge the regional public benefits to be derived from a proposed radio transmission tower facility and the enhancement of "vital regional communications facilities" as special reasons compelling the grant of the variance. Alpine, supra, 231 N.J. Super. at 249-50, 555 A.2d 657 (emphasis added).
The enhanced ability of police, fire, or other rescue personnel to provide emergency services by virtue of an enhanced transmission range, or immediate, on the scene reporting (achievable because of mobile phones), cannot be overstated. Whether it facilitates the rescue of a stranded traveler on a deserted highway, increases business productivity or efficiency, or simply facilitates the exchange of information, one cannot seriously dispute that the proposed facility sufficiently promotes the general welfare of the citizens and businesses of this State to qualify as inherently beneficial.
Had Cellular One required a use variance under N.J.S.A. 40:55D-70(d)(1), the proposed tower would thus have satisfied the positive, or "special reasons" criteria as a matter of law. Consistent with the procedures articulated by the Supreme Court in Sica, supra, the zoning board would have been required to determine whether, on balance, the variance would cause a substantial detriment to the public good. Id., 127 N.J. at 166, 603 A.2d 30. *138 More specifically, after identifying the public interests at stake, any detrimental effects thought to ensue from the grant of the variance would have to be articulated by the Board. Thereafter, the Board would have been required to ameliorate such detrimental effects where possible through the imposition of reasonable conditions, and only then, weigh the positive against the negative criteria to determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good.
The novel question thus presented is whether a Planning Board should be required to perform this same balancing analysis where, as here, the proposed use has been deemed inherently beneficial as a matter of law. I conclude that it should.
If a contrary rule were adopted, a far greater burden would be imposed upon an applicant seeking the less intrusive variance, since the Board would be relieved of its obligation to ameliorate, to the extent achievable through the imposition of reasonable conditions, any detriment anticipated from the proposed use prior to balancing the positives and negatives. Given the heightened judicial scrutiny of municipal attempts to exclude inherently beneficial uses, such a rule would certainly violate the spirit, if not the precise rationale of Sica.[14]
Accordingly, since Cellular One's proposed tower is inherently beneficial, the Planning Board will be directed to perform the balancing analysis articulated by the Supreme Court in its Sica decision.

VI. THE BOARD'S CONSIDERATION OF ELECTROMAGNETIC AND RADIO EMISSIONS

The New Jersey Radiation Protection Act, N.J.S.A. 26:2D-1 to -88, governs radiation protection. Pursuant to this statute, the Commission on Radiation Protection, created within *139 the Department of Environmental Protection and Energy, was empowered to formulate, adopt, promulgate, amend and repeal codes, rules and regulations as may be necessary to prohibit and prevent unnecessary radiation in accordance with the provisions of the Administrative Procedure Act. N.J.S.A. 26:2D-7. Every applicant must adhere to the emission standards thus promulgated by the State. Any attempt to regulate[15] radiation emitting devices has been expressly preempted unless such regulations are in conformity with the Radiation Protection Act in N.J.S.A. 26:2D-1 to N.J.S.A. 26:2D-23.4. See, N.J.S.A. 26:2D-17.
In L.I.M.A., supra, as here, the Board was concerned that the "radiation effects of microwaves posed a health hazard." Id., 219 N.J. Super. at 525, 530 A.2d 839. Nevertheless, the matter was remanded with the direction that the Board consider "only zoning evidence and issues" and "exclude and not consider any evidence or issues with respect to radiation or radiation health issues." Id. at 516, 525, 530 A.2d 839 (emphasis added). The Appellate Division squarely concluded that such concerns were preempted by the Radiation Protection Act, N.J.S.A. 26:2D-1 to -88, firmly stating that any challenge to the issue of preemption "would be clearly lacking in merit." Id. at 525 n. 2, 530 A.2d 839.
Likewise, the "ample evidence" of "safety concerns" noted by the Board in its rejection of Cellular One's application could not lawfully have been considered. On remand, the Board may consider zoning evidence and issues only, and shall not consider any evidence or issues relating to electromagnetic, microwave or radio emissions.

VII. THE PLENARY AND CONSTITUTIONAL ISSUES

A. The FCC Regulatory Scheme

The FCC has been charged with the promulgation of regulations concerning telecommunications. Federal Communications *140 Act, 47 U.S.C. § 151. At the same time, however, municipalities are authorized to regulate the development of land. N.J.S.A. 40:55D-1 to -129. Conflicts between the two regulatory schemes will inevitably result.
In L.I.M.A., supra, 219 N.J. Super. at 520-21, 530 A.2d 839, the court concluded that the FCC regulatory scheme did not preempt all local zoning regulations. Rather, preemption would occur only if the local regulation "differentiates" between satellite dish antenna and "other types of antenna facilities." Id. at 521, 530 A.2d 839.
Likewise, in Skinner v. Zoning Bd. of Adjustment of Cherry Hill Twp., 80 N.J. Super. 380, 392, 193 A.2d 861 (App.Div. 1963), the court noted that:
[D]espite the federal regulation of radio communications, there arise problems ... which require for their proper solution, thorough consideration of the particular area and surroundings. Regulation of these matters is properly left to local regulation without impairment of the national interest in the matter. A zoning regulation is such a matter of local concern.
Although the Township's ordinance cannot operate to conflict with or impair the national interest as codified by the FCC regulations, zoning regulations such as height restrictions are not preempted per se. Consequently the applicant's claim of preemption, if not mooted by the ultimate disposition of this appeal, requires an evidentiary hearing to determine whether the zoning regulations as applied, impair the national interest.

B. The First Amendment

Plaintiff asserts that since the zoning ordinance precludes Cellular One's tower from being functional, an impermissible restraint of speech violative of the First Amendment has occurred, relies for the most part on Burlington Assembly of God Church v. Zoning Bd. of Adjustment Twp. of Florence, 238 N.J. Super. 634, 643, 570 A.2d 495 (Law Div. 1989) (zoning ordinance failed to serve a significant governmental interest by the least restrictive possible means, unconstitutionally depriving the church of its right to free speech).
*141 In L.I.M.A., supra, 219 N.J. Super. at 527, 530 A.2d 839, the Appellate Division has explained:
If it were shown that the probable practical effect of prohibiting plaintiffs from erecting dish antennas in Northvale would be that their communications facility could not operate, or that the audience it could reach would be different, we would agree ... that Northvale's zoning ordinance violates the First Amendment. On the other hand, if it were shown that there are other available locations on which plaintiff's facilities could be more suitably located and still provide essentially the same communications services, then the exclusion of those facilities from Northvale would not violate any First Amendment rights of plaintiffs or those who benefit from their services.
In this case, however, since the forum of communications involved is not a public medium which is being distributed to large numbers of people for political or public interest reasons, but rather, involves conversations between individuals, it may be too great a stretch to find a First Amendment violation.[16] Nonetheless, to the extent that the applicant chooses to pursue this claim, and if it is not mooted by the disposition of this appeal, an evidentiary hearing would ultimately be required. Accordingly, this bifurcated claim is premature and is therefore reserved.

C. The Effect on Interstate Commerce.

Since all cellular carriers are engaged in interstate commerce by virtue of interlocking cell sites enabling cellular phone connections to be made anywhere in the continental United States and Europe, plaintiff claims that the zoning ordinance's thirty foot *142 height limitation unreasonably discriminates against an interstate carrier, thus constituting an unreasonable restraint on interstate commerce. Plaintiff further submits that the height limitation bears no rational relationship to the municipality's legitimate governmental objectives and as such, violates the Interstate Commerce Act, 49 U.S.C. § 10101 to 11917.
In Skinner, supra, 80 N.J. Super. at 392, 193 A.2d 861, the Appellate Division explained that the grant of power to Congress by the commerce clause "did not wholly withdraw from the states the authority to regulate interstate commerce with respect to matters of local concern, so long as the state action serves local ends and does not discriminate against interstate commerce." Whether this height restriction, as applied, discriminates against interstate commerce cannot be adjudicated on the basis of this record. Rather, an evidentiary hearing would be required. Accordingly, this issue is reserved pending resolution of the variance appeal.

VIII. CONCLUSION

For the reasons set forth above, I conclude that: (1) under Old Bridge Township's Ordinances, a height variance is required for the proposed cellular tower; (2) the variance required is a c variance, thus empowering the Planning Board to hear this matter in conjunction with its site plan review; (3) the Planning Board is preempted by the Radiation Protection Act, N.J.S.A. 26:2D-1 to -88, from considering any health or safety issues relating to electromagnetic or radio emissions; (4) the ordinance is not facially invalid under FCC regulations, the First Amendment or the Commerce Clause; and (5) the Planning Board's resolution denying the variance application is legally deficient.
Accordingly, the matter is remanded to the Planning Board with specific instructions to reconsider Cellular One's site plan and ancillary variance application in conformance with the standards and procedures articulated in this opinion. Jurisdiction is retained.
NOTES
[1] The OG-1 zone permits commercial and communications uses, including telephone, telegraph, television and radio communications, recording and sound facilities, satellite antennas, as well as other similar types of uses.
[2] The applicant contended that the antenna was an accessory structure, thereby empowering the Planning Board and not the Board of Adjustment, to grant the requested height variance under N.J.S.A. 40:55D-70(c) pursuant to its ancillary powers. See, N.J.S.A. 40:55D-60; and compare N.J.S.A. 40:55D-70(d)(6) (Board of Adjustment exclusively empowered to grant height variances for principal structures in excess of ten feet or 10%).
[3] The Board's denial was also premised upon the applicant's purported failure to consider alternative locations, essentially concluding that since other sites may have been more suitable, the relief requested on this property should automatically be rejected. The imposition of this burden on the applicant was plainly erroneous. While arguably applicable to a use variance application grounded upon the particular suitability of the property (Mocco v. Job, 56 N.J. Super. 468, 477, 153 A.2d 723 (App.Div. 1959) (insufficient showing that particular site must be the location for the proposed use variance); compare, Pagano v. Zoning Bd. of Adjustment of Twp. of Edison, 257 N.J. Super. 382, 391 n. 11, 608 A.2d 469 (Law Div. 1992); and see also, Medici v. BPR Co., 107 N.J. 1, 526 A.2d 109 (1987)) such a purported "failure" has no relevance to a c(2) bulk variance application.
[4] These constitutional challenges have been bifurcated from that portion of the complaint appealing the Board's denial as arbitrary and unreasonable. Whether these constitutional issues will ultimately be adjudicated or dismissed as moot will depend upon the merits of the appeal. See, Alsar Technology v. Zoning Bd. of Adjustment of Twp. of Nutley, 235 N.J. Super. 471, 485, 563 A.2d 83 (Law Div. 1989).
[5] See e.g., NYT Cable TV v. Homestead at Mansfield, Inc., 111 N.J. 21, 27, 543 A.2d 10 (1988) (Handler, J., concurring) (just compensation clause supplied where omitted from the cable access statute, N.J.S.A. 48:5A-49, to preserve its constitutionality); see also, Princeton Cablevision, Inc. v. Union Valley Corp., 195 N.J. Super. 257, 270, 478 A.2d 1234 (Ch.Div. 1983).
[6] While the governing body clearly anticipated the installation of cellular towers and antennas as permitted uses, it obviously preferred to maximize the Board's discretion and control over each proposal by requiring height variances, necessitating satisfaction of the "negative criteria" in each case. See, N.J.S.A. 40:55D-70; and, cf. N.J.S.A. 40:55D-23 a (planning board membership typically includes both the mayor and one additional member of the governing body).
[7] Regrettably, none of these terms: (1) principal building; (2) principal structure or, (3) accessory use, is defined in the state enabling act, N.J.S.A. 40:55D-1 to -129 (hereafter M.L.U.L.).
[8] The Township and the Township Council are named defendants on those bifurcated portions of the complaint raising constitutional issues. These claims are plenary in nature, and will require an evidentiary hearing if the issues are not ultimately mooted by the final resolution of this appeal.
[9] Although not binding on the court, it may be noted that the Planning Board reached the same conclusion.
[10] Although the "negative criteria" must technically be satisfied as well, this can be safely presumed if the benefits of the deviation in fact substantially outweigh any detriment.
[11] See text accompanying n. 3, supra.
[12] The parameters of this balancing test are discussed in Section V, infra.
[13] Given that a c variance is involved in this case, the court ordinarily would have no occasion to resolve the issue of whether a cellular tower is an inherently beneficial use. However, because of the anomaly that would result if a permitted use were required to satisfy a heavier burden than would be mandated had the proposed use been expressly prohibited, this issue, also one of first impression, must be resolved.
[14] As the Supreme Court has noted, the balancing procedure "properly" renders it "more difficult" for municipalities to exclude inherently beneficial uses. Sica, supra, 127 N.J. at 166, 603 A.2d 30.
[15] That no specific rules or regulations have been adopted by the Township of Old Bridge regarding electromagnetic radiation or emissions is not in dispute.
[16] Compare, Falter v. Veteran's Admin., 632 F. Supp. 196, 203 (D.N.J. 1986) (fact that pay phones in Veteran's Administration Medical Center were not enclosed in booths and were stationed in hallways where complete privacy was not guaranteed did not unconstitutionally infringe upon patient's freedom of speech); Howard v. City of Burlingame, 937 F.2d 1376, 1381 (9th Cir.1991) (city zoning ordinance requiring special permit for amateur radio antennas over twenty-five feet in height was legitimate, content-neutral time, place, and manner restriction with only tangential relationship to speech and did not violate free speech rights of amateur licensee whose application to increase height was denied); Guschke v. City of Oklahoma City, 763 F.2d 379, 385 (10th Cir.1985) (zoning limitation on amateur radio towers did not interfere with free speech rights of amateur radio operator, as operator had no constitutional right to unrestricted access to communicate over radio frequencies and zoning limitations did not impinge on content of operator's speech or prohibit his communications).